Sandra RODRIGUEZ–HERNANDEZ,
Plaintiff, Appellee,

v.

Edwin MIRANDA–VELEZ, et al.,
Defendants, Appellants.

Sandra RODRIGUEZ–HERNANDEZ,
Plaintiff, Appellee,

v.

Edwin MIRANDA–VELEZ, et al.,
Defendants, Appellants.

Sandra RODRIGUEZ–HERNANDEZ,
Plaintiff, Appellee,

v.

Edwin MIRANDA–VELEZ, ET AL.,
Defendants, Appellants.

Sandra RODRIGUEZ–HERNANDEZ,
Plaintiff, Appellant,

v.

Edwin MIRANDA–VELEZ, et al.,
Defendants, Appellees.

Nos. 95–2027, 96–1416, 97–1444 and 97–1445.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1997.

Decided Jan. 6, 1998.

850

Judith Berkan, with whom Rosalinda Pesquera, San Juan, PR, and Mary Jo Mendez, Piedras, PR, were on brief, for Plaintiff.

Eugene F. Hestres, San Juan, PR, with whom Bird, Bird & Hestres was on brief, for Defendants.

Frank D. Inserni on brief, pro se.

Before LYNCH, Circuit Judge, CYR, Senior Circuit Judge, and DiCLERICO,* District Judge.

LYNCH, Circuit Judge.

Sandra Rodriguez–Hernandez was discharged from her job at Occidental International after complaining to her employer about being subjected to the sexual demands of a high-level executive at Occidental's most important customer. The main issues presented by this appeal are whether the jury's verdict in favor of the customer dictates that the verdict against her employer be reversed; whether the court's evidentiary and juror peremptory challenge rulings were correct; whether the district court evinced bias against the defendants; and whether the court's attorney's fees award was adequate. We affirm the verdict, but we vacate and remand on the attorney's fees issue.

* Of the District of New Hampshire, sitting by

## I.

We review the facts in the light most favorable to the jury's verdict. *See Ansin v. River Oaks Furniture, Inc.*, 105 F.3d 745, 749 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 70, 139 L.Ed.2d 31 (1997).

Rodriguez worked as an office manager for Occidental International, a Florida company with offices in Florida and Puerto Rico. Rodriguez started working for Occidental in December of 1988 in the Traffic and Claims division of the Puerto Rico office. She was twice promoted, and was put in charge of overseeing the daily operations of her office in February of 1990. While she was never formally evaluated during her employment, Rodriguez received regular praise for her work, and before the suspension and dismissal that led to this lawsuit, she had never been the subject of disciplinary action.

Occidental International sells electrical and industrial equipment. Occidental's most important market was Puerto Rico, and its most important customer was the Puerto Rico Electric Power Authority ("PREPA"). At the time of Rodriguez's dismissal, approximately 80% of Occidental's business in Puerto Rico was with PREPA.

Omar Chavez was the President and sole shareholder of Occidental. Chavez lived in Florida, and would make monthly business trips to Puerto Rico. Chavez pursued a number of strategies which he thought would ensure continued good relations between Occidental and its customers, particularly with PREPA. Evidence presented at trial showed that Chavez primarily employed young, attractive women, known to customers as "Occidental Gals," and instructed them to be especially cordial to PREPA employees.

Good relations were particularly important with high-ranking PREPA officials like Edwin Miranda–Velez, the Chief of PREPA's Materials Management Division and the overseer of PREPA's public contracts for the type of goods sold by Occidental. Chavez introduced Rodriguez to Miranda, and told her that Miranda was very important for

designation.

Occidental's business and that she and the other employees should be nice to him and "keep him satisfied." She was instructed to visit Miranda every time she went to the PREPA offices.

Occidental pursued other strategies. It made political contributions to the Popular Democratic Party, of which Miranda was a very active member, and solicited donations on its behalf. Chavez financed social activities for PREPA employees and gave Christmas presents to PREPA officials. In December of 1990, Chavez threw a party for PREPA officials at a local hotel. The members of the Occidental Puerto Rico staff, all female, were instructed to attend the event unaccompanied, so they would be available to dance with the PREPA executives. The night's entertainment at that party included a dancing show performed by scantily clad women.

The close relationship with PREPA benefitted Occidental, and Chavez, in several ways. Chavez was able to learn from Miranda in advance what bids would be coming up and how much Occidental's competitors were bidding. Miranda helped to steer business to Occidental through requests for proposals that were handled outside the ordinary bidding process. For example, Miranda helped Occidental to obtain a transportation contract on an "emergency" basis. Miranda signed all pertinent documentation and recommended payments to suppliers. There were also allegations that Miranda was able to help Occidental avoid trouble over tax disclosures.

Miranda began to make unwelcome approaches and suggestive comments to Rodriguez. He invited her out to dinner. He asked her to visit his office after hours and on Friday evenings. He anonymously sent her flowers for her birthday and included a sexually explicit card. Rodriguez complained to Chavez about this behavior; Chavez responded by stressing that Miranda was an important client, but assured her that he would deal with the problem.

The culmination, as it were, of Miranda's advances came on February 28, 1992. Miranda called Rodriguez and told her he would come pick her up to take her to a motel.

Rodriguez, upset by Miranda's latest advance, called Chavez to complain about Miranda's call. Chavez responded by defending Miranda, and saying that Rodriguez should respond to Miranda "as a woman." Rodriguez told Chavez that if he would do nothing about the situation, she would take her complaints to the Director of PREPA.

That weekend, Chavez flew to Puerto Rico. On March 9, 1992, Chavez gave Rodriguez a letter informing her that she was suspended from work for thirty days. The letter stated the reasons for her suspension as unauthorized use of company property, contracting for services in the company name without authorization, and absenteeism. On April 6, Rodriguez received a second letter dismissing her from employment at Occidental. The grounds for her dismissal were an unexplained imbalance of $157.00 in petty cash funds and negligence in executing daily functions such as picking up company mail, as well as the problems noted in the March 9 letter. Rodriguez had never been notified of any such deficiencies before.

## II.

In September of 1992, Rodriguez filed a complaint against Occidental and Chavez with the Anti–Discrimination Unit of the Puerto Rico Department of Labor and with the Equal Employment Opportunity Commission. In November of 1992, while that complaint was before the agency, Rodriguez sued Miranda in district court under 42 U.S.C. § 1983 for violations of her rights under the Fifth, Ninth, and Fourteenth Amendments, and sued both Miranda and PREPA under Puerto Rico tort law and the Puerto Rico Constitution.

After exhausting her administrative remedies, Rodriguez received a right-to-sue letter from the EEOC in June of 1993 and amended her complaint to name Chavez and Occidental as defendants. The amended complaint asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17, as well as claims under Puerto Rico law.

In July of 1994, the district court issued an order eliminating some of Rodriguez's claims.

The district court dismissed the § 1983 claim, but not the Puerto Rico law claims, against Miranda. Thus only Puerto Rico law claims remained against Miranda and PREPA, over which the court retained jurisdiction under 28 U.S.C. § 1367. The district court granted summary judgment in favor of defendant Chavez on Rodriguez's Title VII claim against Chavez, but allowed the Puerto Rico law claims against Chavez to go to the jury. Thus the only federal claim that remained at the start of the trial was Rodriguez's Title VII claim against her employer, Occidental. The only claims which went to the jury against Miranda were based on commonwealth law.

The trial was hotly contested and extremely contentious. In the course of the trial, the district court sanctioned defense counsel for violating an order in limine. After a five week trial, the jury held Occidental and Chavez liable to the plaintiff, but found Miranda and PREPA not liable. The jury form simply asked that the jurors answer yes or no as to whether each of the defendants was "liable to plaintiff Sandra Rodriguez." Rodriguez received an award of $200,000 in compensatory and punitive damages against Occidental and Chavez. The jury answered no as to the commonwealth law claims against Miranda.

The district court awarded Rodriguez attorney's fees. But in the face of a documented request for approximately $440,000 in fees and costs, the court awarded only $150,223.26. The district court disallowed some work as duplicative, some as having been performed by attorneys when the court thought it should have been done by paralegals, and further reduced the award because of the plaintiff's "lack of success."

Occidental and Chavez appeal from the jury verdict in cases number 96–1416 and 97–1444, alleging a host of errors and demanding a new trial. Defense counsel Inserni appeals in case number 95–2027 from the contempt order issued against him during the trial. Plaintiff cross-appeals, in case number 97–1445, arguing that the district court's award of attorney's fees was in error and insufficient.

## III. Appeal of Occidental and Chavez

### A. Jury Inconsistency Argument

■ Occidental and Chavez's flagship argument, simply put, is that because the jury did not find either Miranda or PREPA liable to Rodriguez, Chavez and Occidental cannot be held liable either. Rodriguez could not have been dismissed for refusing to submit to (or threatening to complain of) Miranda's advances, defendants argue, because the jury verdict shows that Miranda never engaged in the conduct of which she complains. This argument is founded upon the erroneous assumption that the jury's verdict that Miranda and PREPA are not "liable to plaintiff" under Puerto Rico tort or constitutional law necessarily means that the jury did not believe that Miranda made unwanted sexual advances, that Rodriguez complained of these advances, and that her employer fired her in response.

The defendants' argument fails, as the jury could quite plausibly have found a set of facts that would render Chavez and Occidental, but not Miranda and PREPA, "liable to plaintiff" on the claims asserted.

In order to evaluate the defendants' arguments, it is important to understand the nature of the claims brought against each of the four defendants in this case. Rodriguez sued the customer, Miranda and PREPA on two theories—liability under Puerto Rico tort law and violation of Rodriguez's rights to "privacy and dignity" under the Puerto Rico Constitution. The jury was instructed that, to find Miranda liable to the plaintiff in negligence, it had to find "that there was an act or omission, by fault or negligence, that caused the plaintiff's injury." See P.R. Laws Ann. tit. 31, § 5141 (1991) ("A person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction in the indemnity.")

For Miranda to be liable under the Constitution of Puerto Rico, the jury was instructed that it must find that Miranda "engaged in conduct against the plaintiff which adversely affected her dignity, honor, or reputa-

tion...." *See* P.R. Const. art. II, § 1 ("The dignity of the human being is inviolable.... No discrimination shall be made on account of ... sex...."); P.R. Const. art. II, § 8 ("Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life.").

If Miranda was not liable to Rodriguez under these two theories, then PREPA could not be found liable to Rodriguez either. PREPA's liability was only in respondeat superior for the actions of Miranda.

Both of the claims as described to the jury contain an element of causation. The jury may simply have decided that Rodriguez's injuries resulted not from Miranda's actions, but from those of Chavez and Occidental. Thus the jury may have declined to hold Miranda liable, not because the jurors did not believe that he made sexual advances, but rather because they concluded that this behavior did not itself cause the harms Rodriguez suffered.

In contrast, the plaintiff asserted four different theories of liability against Chavez under Puerto Rico law, none of which is inconsistent with the jury's refusal to hold Miranda and PREPA liable. In addition to the tort and constitutional claims described above, Rodriguez sued Chavez for sex discrimination and retaliatory discharge. Puerto Rico's Law 100 forbids sex discrimination by employers, and provides for civil liability and damages. *See* P.R. Laws Ann. tit. 29, § 146 (1995). Puerto Rico's Law 17 defines sex harassment as a type of sex discrimination, and forbids retaliation against persons who "reject" the employer's sexually discriminatory practices. *See* P.R. Laws Ann. tit. 29, §§ 155–155*l* (1995). Under Puerto Rico law, an employer is held responsible for "the acts of sexual harassment towards his employees in the work place by persons not employed by him if the employer or his agents or supervisors knew or should have known of such conduct and did not take immediate and adequate action to correct the situation." P.R. Laws Ann. tit. 29, § 155f.

The plaintiff also sought separation pay from Chavez and Occidental for unjust dismissal under Puerto Rico Law 80. *See* P.R. Laws Ann. tit. 29, § 185a (1995) ("Every employee in commerce ... who is discharged from his employment without good cause, shall be entitled to receive from his employer, in addition to the salary he may have earned: (a) The salary corresponding to one month, as indemnity; (b) An additional progressive indemnity equivalent to one week for each year of service."). Further, in addition to the same four causes of action under Puerto Rico law asserted against Chavez, Rodriguez sued Occidental for sex discrimination under Title VII.

We cannot, based on the jury form, determine which of Rodriguez's claims against Chavez and Occidental succeeded. The jury was asked only to answer yes or no as to whether each defendant was "liable to plaintiff Sandra Rodriguez." The jury could have properly decided to hold Chavez and Occidental liable because they discriminated against Rodriguez on the basis of her sex, or because they retaliated against her for her complaints about Miranda's behavior.

Sexual harassment is an unlawful form of sex discrimination, and both Chavez and Occidental could be held liable for sex harassment on either of two theories—quid pro quo or hostile work environment.

Under the quid pro quo theory, Rodriguez's continued employment was conditioned on coerced sex, a condition that was inherently linked to her gender. Puerto Rico law, *see* P.R. Laws Ann. tit. 29, § 155f, and other circuits, interpreting Title VII, have said that employers can be liable for a customer's unwanted sexual advances, if the employer ratifies or acquiesces in the customer's demands. *See Folkerson v. Circus Circus Enters., Inc.,* 107 F.3d 754, 756 (9th Cir.1997). This is a case in which Rodriguez's employer not only acquiesced in the customer's demands, but explicitly told her to give in to those demands and satisfy the customer. This conduct is clearly an example of quid pro quo sexual harassment, as Rodriguez's employer conditioned her future with the company on her responding to the unwanted sexual demands of a customer.

Under the hostile work environment theory of sex discrimination, the jury could have

reasonably found that Chavez and Occidental had established a working environment hostile to women. The jury was instructed that this theory of sex discrimination "involves forms of sexually-related misconduct which are severe and pervasive and unreasonably interfere with work performance or create a hostile, intimidating or offensive working environment. It can include demeaning comments or expectations of a certain sexual behavior in the workplace." This environment would be a product not only of Chavez's refusal to do anything about Miranda's advances, but also of incidents such as the 1990 Christmas party.

■ Likewise, the success of a retaliation claim does not require that the alleged wrongful conduct itself be illegal. For her retaliation claim to succeed, Rodriguez merely needed to show that she "reasonably believed" that the conduct of which she complained or threatened to complain violated Title VII. *See Wyatt v. City of Boston*, 35 F.3d 13, 15 (1st Cir.1994); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir.1990); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 865 (3d Cir.1990) (noting that a long line of cases holds that a "plaintiff establishes a retaliation claim if she shows that she had a reasonable belief that the employer was engaged in an unlawful employment practice and that the employer retaliated against her for protesting that practice."). The jury may have found that the close relationship between PREPA and Occidental made it reasonable for Rodriguez to believe that Miranda's unwanted advances constituted unlawful sexual harassment about which she had a right to complain.

### B. Peremptory Challenges

■ Defendants challenge the district court's disallowance of two of their peremptory challenges. Because this determination is fact-sensitive, we review it for clear error. *See Brewer v. Marshall*, 119 F.3d 993, 1004–05 (1st Cir.1997); *see also Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995) (per curiam). Initial juror selection in this case began with a panel of sixteen jurors containing nine men and seven women. The court then granted each side four peremptory challenges, leaving eight jurors.

Plaintiff objected to the defendants' use of all four of their peremptory challenges to exclude women from the jury panel, arguing that these peremptory challenges were a violation of the Equal Protection Clause under *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (extending *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) to gender-based peremptory challenges in civil cases). The defendants explained their challenges on gender-neutral grounds, but the district court disallowed two of the peremptory challenges, stating that the explanations were merely a pretext for unlawful discrimination.

■ The district court noted, properly, that its decision to disallow the two peremptory challenges was based on the totality of the circumstances of the litigation. *See Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991). Upon examination of the judge's justification and the trial record, we do not find his decision to disallow the peremptory challenges to be clearly erroneous.

### C. Evidentiary Rulings

■■ We review a district court's evidentiary rulings for abuse of discretion. *See General Elec. Co. v. Joiner*, —— U.S. ——, ——, 118 S.Ct. 512, 516, 139 L.Ed.2d 508 (1997); *A.W. Chesterton Co. v. Chesterton*, 128 F.3d 1, 9 (1st Cir.1997). Errors in evidentiary rulings are harmless if it is highly probable that the error did not affect the outcome of the case. *See Harrison v. Sears, Roebuck & Co.*, 981 F.2d 25, 29–30 (1st Cir. 1992).

#### 1. Rulings under Rule 412

Defendants continually sought to make an issue of plaintiff's sexual history. In the course of this litigation, defendants attempted to paint the plaintiff as sexually insatiable, as engaging in multiple affairs with married men, as a lesbian, and as suffering from a

sexually transmitted disease.[2] Defendants claimed that plaintiff had an affair with a married man that caused her to become distracted from work, and led to the lapses for which she was fired.

Fed.R.Evid. 412 was designed to prevent misuse of a complainant's sexual history in cases involving "alleged sexual misconduct." In a civil case, the sole exception to Rule 412's prohibition of evidence offered to prove "that any alleged victim engaged in other sexual behavior" or "any alleged victim's sexual predisposition" is that

> evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and *its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party.* Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim.

Fed.R.Evid. 412(b)(2) (emphasis added). Rule 412 thus reverses the usual approach of the Federal Rules of Evidence on admissibility by requiring that the evidence's probative value "substantially outweigh" its prejudicial effect.

Rule 412 mandates procedural safeguards for the introduction of such evidence under the 412(b)(2) exception. A party intending to offer such evidence must file a motion specifically describing the evidence and its purpose at least fourteen days before trial, serve the motion on all parties, and notify the alleged victim. Before admitting the evidence the court must conduct an in camera hearing to afford the victim and parties a right to be heard. *See* Fed.R.Evid. 412(c).

■ The district court ruled that evidence concerning plaintiff's moral character or promiscuity and the marital status of her boyfriend was inadmissible under Rule 412. But the court allowed defendants to introduce evidence directly relevant to their theory that plaintiff's relationship distracted her from work. The court also held that evidence concerning plaintiff's allegedly flirta-

tious behavior toward Miranda was admissible to determine whether Miranda's advances were in fact "unwanted."

These evidentiary rulings were well within the district court's discretion. The court struck an acceptable balance between the danger of undue prejudice and the need to present the jury with relevant evidence, particularly in light of Rule 412's special standard of admissibility.

## 2. Rulings under Rule 403

Nor is there any abuse of discretion in the district court's other evidentiary rulings. Under Fed.R.Evid. 402, all relevant evidence is admissible unless otherwise provided by federal law. *See* Fed.R.Evid. 402. Under Fed.R.Evid. 403, relevant evidence may be excluded if its probative value is "substantially outweighed" by the danger of prejudice or confusion. *See* Fed.R.Evid. 403.

■ Defendants challenge the exclusion of certain telephone records, rebuttal evidence by some of plaintiff's co-workers, and an answering machine tape. We agree with the district court that the testimony and phone records would have been, at best, cumulative. The district court conducted lengthy proceedings over the admissibility of an answering machine tape produced by Chavez that purportedly contained several messages from Rodriguez to Chavez that could imply that they had been intimate. The defendants argue that this piece of evidence would have shown that "plaintiff treated Chavez affectionately and could not have been complaining of sexual harassment." An FBI analysis of the voice on the tape was inconclusive. The court ruled that the tape was inadmissible under Fed.R.Evid. 403, and we agree that this dubious evidence had minimal probative value, and had great potential to confuse the jury.

Defendants complain of a "double standard" because the district court allowed information introduced by plaintiff while excluding evidence introduced by defendant. The court allowed evidence concerning the close ties between Occidental and PREPA,

---

**2.** During discovery, defendants requested that plaintiff submit to an AIDS test, apparently to substantiate their allegations of promiscuity. The request was denied.

including evidence of political donations, Occidental's tax status, the dancing show at the 1990 Christmas party, and a letter regarding Occidental's sales volume. In fact, as to the excluded evidence, Fed.R.Evid. 412 *required* the district court to apply a stricter standard with regard to admission of evidence of plaintiff's sexual history than to the evidence admitted under the more liberal standard of Fed.R.Evid. 402 & 403. This evidence was directly relevant to the theory of Rodriguez's case—that Chavez and Occidental were willing to fire her when she complained about Miranda in order to maintain their close relationship with Miranda and PREPA.

Having examined each of the district court's evidentiary rulings, we find none that represents an abuse of its discretion. Even if the court's exclusions were error, none of the excluded evidence would have had an impact on the outcome of the trial, as it would have at best been duplicative of evidence that was admitted.

### D. Claims of Judicial Bias

Occidental and Chavez argue that the district court judge's admonitions to defense counsel evince bias, which tainted the jury verdict. They claim that this bias was further demonstrated by the judge's rulings on defense counsel's peremptory challenges, exclusion of evidence, and his sanctioning defense counsel for violating an evidentiary ruling under Fed.R.Evid. 412. The contested rulings are discussed elsewhere, and they were entirely proper. Most of the comments appellants complain of were made outside the hearing of the jury.

 At the very latest, this claim should have been raised in defendants' Rule 50 motion before the district court. It is therefore waived. *See In re Abijoe Realty Corp.*, 943 F.2d 121, 126–27 (1st Cir.1991). Claims of judicial partiality must be raised at the earliest moment that a litigant becomes cognizant of the purported bias, and certainly not for the first time on appeal. *See id.; cf. In re Marisol Martinez–Catala*, 129 F.3d 213, 219 (1st Cir.1997) (explaining procedures for judicial disqualification and noting that "disqualification is almost never required

where the judge's opinions are based on the proceedings"). A party may not simply wait to see what outcome he or she receives in a trial before an allegedly biased judge. *See In re United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir.1960).

 To allay any suspicions of judicial taint, however, we note that, having read the entire trial record, we find none. The isolated, occasional comments cited by appellants fall far short of prejudice and do not come close to supporting a contention that defendants were deprived of a fair trial. *See United States v. Devin*, 918 F.2d 280, 294–95 (1st Cir.1990); *Aggarwal v. Ponce Sch. of Med.*, 837 F.2d 17, 22 (1st Cir.1988). The judge's scattered critical comments were largely made out of the jury's hearing, and usually were in direct response to defense counsel's interruptions and unsuitable conduct. *See United States v. Polito*, 856 F.2d 414, 418 (1st Cir.1988) ("Charges of partiality should be judged not on an isolated comment or two, but on the record as a whole."). The entirety of the record reveals that the judge evinced not bias, but rather a desire to conduct the trial in as civil a manner as possible. That desire was evidently not shared by counsel for the defendants, and rebukes for this lack of civility were entirely warranted.

### IV. The Sanction Order Against Counsel

 Attorney Inserni appeals the district court's decision to sanction him for violating a court order prohibiting mention of matters such as the marital status of plaintiff's boyfriend without first clearing such evidence with the court to allow it to make a final Rule 412 ruling. During plaintiff's testimony, the court ruled that the marital status of plaintiff's boyfriend was not admissible, and admonished counsel to approach the bench before asking any question that might raise concerns under Rule 412. Attorney Inserni subsequently asked plaintiff's psychologist; in front of the jury, "Did [the plaintiff] tell you during your interviews or during your clinical work on her case, did she ever mention to you that *she had multiple relationships with*

*married men?*"[3] The district court properly noted that this question violated its ruling, rebuked counsel after first dismissing the jury, and fined him $500. The court later instructed the jury that counsel had violated a court order and jurors were to disregard the question. This response was fully justified, and we find no error. *See Polito,* 856 F.2d at 418. Inserni shall pay the costs of his appeal to plaintiff.

## V. Plaintiff's Appeal

Rodriguez appeals the district court's reduction of her attorney's fees and costs award from approximately $440,000 to $150,223.26. As noted above, the district court justified this reduction on several grounds: duplication of effort by plaintiff's attorneys, the use of attorneys for "paralegal work," and the plaintiff's lack of success. The court uniformly cut the attorneys' requested hourly rates by fifteen dollars, except for Attorney Berkan's out-of-court rate, which it cut by ten dollars. The court reduced the fee request to $346,211.53, and then reduced this amount by sixty percent because of the plaintiff's "lack of success."

Starting with the "lodestar" calculation of the hours worked by each attorney multiplied by the attorney's hourly rate, the court deducted time that it determined was duplicative or unnecessary. The court deducted 97 hours of attorney time because it viewed the time spent on indexing depositions as excessive, and agreed with defendants that the work was a "paralegal task." The court noted a number of entries on plaintiff's counsels' time sheets that suggested duplicative efforts. The court calculated that these duplicative efforts totaled 120 hours, and deducted this amount. Thirteen more hours were deducted for excessive time in preparing the attorney's fees petition.

The court determined that it was excessive for three attorneys to be present at trial, and adjusted the hours so that the time compensated amounted to that of only two attorneys at any given time. The court uniformly reduced the requested hourly rates of Rodriguez's attorneys by fifteen dollars, except for

Attorney Berkan's out-of-court hourly rate, which it reduced by ten dollars. Because it determined that the plaintiff enjoyed only limited success in each of her theories of recovery, the court reduced the lodestar figure by sixty percent of the total amount.

■ Fee awards are reviewed deferentially, and will be disturbed only for mistake of law or abuse of discretion. *See Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 336 (1st Cir.1997); *Lipsett v. Blanco,* 975 F.2d 934, 936 (1st Cir.1992) (noting that "because determination of the extent of a reasonable fee necessarily involves a series of judgment calls, an appellate court is far more likely to defer to the trial court in reviewing fee computations than in many other situations."). Even under this deferential standard, however, we conclude that the district court's attorney's fees orders must be vacated.

### A. Lack of Success

■ The district court reduced the fee award by sixty percent for "lack of success" because Rodriguez did not prevail on all of her claims and she did not receive the full amount of damages she sought. According to the district court, the plaintiff "ultimately succeeded on her claim of retaliation" and while the "unsuccessful claim, the sexual harassment claim, was linked to the successful claim of retaliation, this fact alone does not preclude any reduction based on the failure to establish sexual harassment."

■ The district court did not explain how it had come to the conclusion that the jury had decided Rodriguez's claims in this way. When a fee award is reduced substantially, a more detailed explanation is in order. *See Brewster v. Dukakis,* 3 F.3d 488, 493 (1st Cir.1993) ("As a general rule, a fee-awarding court that makes a substantial reduction in either documented time or authenticated rates should offer reasonably explicit findings, for the court, in such circumstances, 'has a burden to spell out the whys and wherefores.'") (quoting *United States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 18 (1st

---

3. We add, as the district court understood, that defense counsel knew from her deposition that the psychologist would answer "no" to that question.

Cir.1988)). As our discussion in part III.A above demonstrates, the jury could have found that Rodriguez's sex harassment claims against Chavez and Occidental succeeded, on either a quid pro quo or hostile environment theory.

The district court may have made the same mistake that the defendants have made in arguing that, because Miranda was not found liable, no "sex harassment" occurred. As noted, this conclusion is not mandated by the jury's general verdict. Neither did Rodriguez's sexual harassment claims fail when the district court dismissed her claims under Title VII against Chavez, as she continued to pursue sex discrimination claims under Puerto Rico law. Indeed, it appears Rodriguez has "prevailed up and down the line" on her claims against Chavez and Occidental, in which case "a claims-based, results-obtained fee reduction is wholly inappropriate." *Coutin*, 124 F.3d at 340.

■ The district court's reduction of the lodestar figure by sixty percent of the total because of the plaintiff's "lack of success" was error. Three measures of "success" pertain to civil rights lawsuits such as this one: "plaintiff's success claim by claim, ... the relief actually achieved, ... [and] the societal importance of the right which has been vindicated." *Coutin*, 124 F.3d at 338. The plaintiff was clearly successful under the latter two definitions.

Rodriguez received a substantial monetary award constituting full compensation for her injuries, as well as punitive damages. The jury awarded Rodriguez all three types of monetary compensation provided for in the verdict form: compensation for back pay and/or front pay and other related job benefits; punitive damages; and compensatory damages for her emotional and/or mental suffering.

■ Congress has encouraged private suits to counter sex discrimination through the award of attorney's fees to successful litigants. See *City of Riverside v. Rivera,* 477 U.S. 561, 574–75, 106 S.Ct. 2686, 2694–95, 91 L.Ed.2d 466 (1986) (plurality opinion); *Coutin,* 124 F.3d at 337. In a civil rights lawsuit, "[t]he result is what matters," *Hens-*ley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), and in this case plaintiff apparently vindicated her Title VII claim and received substantial damages. See also *Aubin v. Fudala,* 782 F.2d 287, 291 (1st Cir.1986) ("[A] plaintiff should receive significant fees when he has won a *partial* victory on a civil rights claim while receiving substantially the relief he there sought ....") (emphasis in original). Both the plaintiff's employer company and her boss were found liable for the harms she suffered.

We do not view plaintiff's claims regarding Miranda's unwanted sexual advances as "unrelated" to the claims upon which she prevailed such that attorney's fees should not be awarded for pursuing these claims. See *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1939–40. Indeed, the close relationship between Occidental and PREPA, and between Chavez and Miranda, was a foundational element of her claims against Chavez and Occidental, and would have needed to be developed even if plaintiff had not sued Miranda or PREPA. It was this close relationship among the defendants that made credible plaintiff's contentions that her boss asked her to respond to Miranda's sexual advances because Miranda and PREPA were valued customers, and that he fired her when she refused. See *id.* at 440, 103 S.Ct. at 1943 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); *Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 962–66 (1st Cir.1995). Rodriguez's unsuccessful claims were based both on a common-core of facts and on related legal theories. See *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940.

While it is true that plaintiff's fee request was more than twice the damages awarded, the Supreme Court has held that the size of the verdict does not bar the recovery of large attorney's fees awards. See *City of Riverside,* 477 U.S. at 574–75, 106 S.Ct. at 2694–95; *see also Coutin,* 124 F.3d at 338 (discrepancy between award requested and received does not "amount to more than one element in the constellation of factors that the court considers when determining the quality of

results obtained"); *Foley v. City of Lowell,* 948 F.2d 10, 19 (1st Cir.1991). Thus, because the district court failed to articulate its reasons for finding "lack of success," and no sound reasons are apparent in the record, we must vacate its order and remand for reconsideration.

### B. Other Fee Reductions

 On remand, the district court should also revisit the reductions for duplicative efforts and paralegal work. Of course, ordinarily we defer to the court's judgment on these matters, because staffing issues are usually "best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncracies." *Lipsett,* 975 F.2d at 939. In setting fees, the district court has "broad discretion to determine 'how much was done, who did it, and how effectively the result was accomplished.'" *Id.* (quoting *Wagenmann v. Adams,* 829 F.2d 196, 224 (1st Cir.1987)). In the "gray areas," such as deciding whether a given task is properly entrusted to a paralegal, "the district court's judgment carries the greatest weight." *Id.* at 940. Clerical tasks ought not to be billed at lawyer's rates, even if a lawyer performs them. *See id.*

Time spent by two attorneys on the same general task is not, however, *per se* duplicative. Careful preparation often requires collaboration and rehearsal, and the court should not reward defendants for their vehement "Stalingrad defense," a tactic they have continued to employ on appeal. *Id.* at 939. Indeed, because a litigant's staffing needs and preparation time will often "vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance." *Id.* In this case, the record reveals that the defense was indeed extreme. As we find that the district court's unexplained reduction for lack of success independently requires a remand, we consider the entire issue open for reconsideration and need not decide whether the other alleged errors in calculating attorney's fees would alone prompt reversal.

### VI. Conclusion

To conclude, we find any residuum of claimed errors to be without merit and unworthy of extended discussion. The jury verdict is *affirmed.* The award of attorney's fees is *vacated,* and we remand this case for recalculation of the attorney's fees award in accordance with this opinion. Costs are awarded to Rodriguez.