USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2183

 ANTONIO ACOSTA-MESTRE,

 Plaintiffs, Appellants,

 v.

 HILTON INTERNATIONAL OF PUERTO RICO, INC.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Campbell and Cyr, Senior Circuit Judges.
 
 

 Carlos E. Rodriguez-Quesada, with whom Woods & Woods was on
brief, for appellants.
 Hector F. Oliveras, with whom Rafael A. Vila-Carrion and
Pinto-Lugo & Rivera were on brief, for appellees.

August 25, 1998

 

 CAMPBELL, Senior Circuit Judge. This is a diversity
action in which Antonio Acosta-Mestre ("Acosta") and his family
sued Hilton International of Puerto Rico ("Hilton") and its insurer
in the district court for negligence and products liability. While
staying as a guest at the Caribe Hilton Hotel, Acosta was injured
when a lounge chair, manufactured by Tropitone Furniture Company,
Inc.("Tropitone"), collapsed on his hand. Acosta raises several
issues on appeal. He challenges the district court's denial of a
motion to amend the complaint to add Tropitone as a defendant. 
Acosta also challenges the court's exclusion of testimony from his
proffered expert witness and asserts that the court erred in
denying his motion for a new trial. Finally, Acosta contends that
the district court erred in certain evidentiary rulings. For the
reasons stated below, we affirm. 
 BACKGROUND
 On April 14, 1995, Acosta and his family were guests of
the Caribe Hilton Hotel in San Juan, Puerto Rico. While sunbathing
in the hotel's enclosed beach area, Acosta reached back to adjust
his chaise lounge. The back of the chair suddenly collapsed,
severing a portion of Acosta's left ring finger.
 Acosta and his family sued the Caribe Hilton's parent
company and its insurer in the federal district court for the
District of Puerto Rico, invoking diversity jurisdiction under 28
U.S.C. 1332. The complaint alleged causes of action for
negligence based upon improper maintenance of the chaise lounge,
strict products liability based upon an alleged design defect, and
strict products liability based upon a breach of the implied
warranty of merchantability, and sought damages in the amount of
$1.85 million. 
 Fifteen months after filing the complaint, Acosta
requested leave to amend the complaint to add Tropitone, the
chair's maker, as a defendant. The district court denied the
motion in an unpublished memorandum order on the grounds that
Acosta had failed to justify waiting for fifteen months before
seeking to add the chair's manufacturer as a defendant, and that
allowing such an amendment now would create unreasonable further
delay. 
 Prior to trial, Hilton moved to exclude the testimony of
Acosta's expert witness, Dr. Kenneth Soderstrom, a mechanical
engineer who was to testify in support of Acosta's strict products
liability claims. Hilton also filed a motion to strike Dr.
Soderstrom as an expert witness on the ground that under Puerto
Rico law Acosta could not recover against Hilton on any theory of
strict products liability, rendering Dr. Soderstrom's testimony on
the subject irrelevant. On the fourth day of trial, the district
court granted the motion to exclude Dr. Soderstrom's testimony. It
also granted Hilton's motion for judgment as a matter of law as to
those claims, leaving only the negligence claim to be tried to a
jury. 
 At trial, the district court ruled against Acosta on two
evidentiary issues now appealed. First, the court excluded the
testimony of Hilton's swimming and tennis director, Naomi Nobel. 
Second, the court excluded a "Notarial Act" offered in support of
several photographs, taken by Acosta, of Hilton chaise lounges.
 On the surviving negligence count, the jury found for
defendants. The district court entered judgment and denied
Acosta's motion for a new trial which was based, in part, on
Acosta's discovery of purportedly "new" evidence. This appeal
followed.
 DISCUSSION
1. Denial of Acosta's Motion To Amend the Complaint
 In denying Acosta's motion to amend the complaint to name
Tropitone as an additional defendant, the district court reasoned
that the motion to amend, which Acosta filed near the close of
discovery and after three previous extensions of the discovery
deadline had been granted, was tardy, and that Acosta lacked any 
sufficient excuse for delaying so long before moving to amend. We
review the district court's denial of leave to amend the complaint
"for an abuse of discretion, and defer to the district court if any
adequate reason for the denial is apparent on the record." Grantv. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995).
 Under Federal Rule of Civil Procedure 15(a), a litigant
may amend a pleading once as a matter of right before a responsive
pleading is filed and subsequently by the parties' consent or "by
leave of court." Fed. R. Civ. P. 15(a). While "leave [to amend]
shall be freely given when justice so requires," id., "the liberal
amendment policy prescribed by Rule 15(a) does not mean that leave
will be granted in all cases." 6 Charles Alan Wright et al.,
Federal Practice and Procedure 1487, at 611 (2d ed. 1990). Among
the adequate reasons for denying leave to amend are "undue delay"
in filing the motion and "undue prejudice to the opposing party by
virtue of allowance of the amendment." Foman v. Davis, 371 U.S.
178, 182 (1962); see also Grant, 55 F.3d at 5. Here defendant did
not consent to the motion, and we find no abuse of discretion in
the court's conclusion that Acosta's request for leave to file a
second amended complaint was preceded by undue delay.
 Acosta filed the initial complaint on September 20, 1995,
and an amended complaint on November 22, 1995. On December 17,
1996, fifteen months after the initial complaint had been filed,
and over a year after the first amendment, Acosta filed a motion
for leave to file a second amended complaint to add the chair's
manufacturer, Tropitone, as a defendant. By that time, discovery
was set to conclude in one month, on January 17, 1997. In
addition, the court had approved the parties' proposed pre-trial
order just a week before, on December 5, 1996. 
 Hence by the time of the motion for leave to amend, 
nearly all the case's pre-trial work was complete. According to
the district court's undisputed estimate, allowing the motion would
have resulted in at least an additional four months of discovery
and would have delayed trial by at least an additional twelve
months. These consequential delays put the ball in Acosta's court,
for when "considerable time has elapsed between the filing of the
complaint and the motion to amend, the movant has the burden of
showing some 'valid reason for his neglect and delay.'" 
Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933
(1st Cir. 1983) (quoting Hayes v. New England Millwork Distribs,
Inc., 602 F.2d 15, 19-20 (1st Cir. 1979)). The district court
could reasonably determine that Acosta failed to carry this burden. 
 On appeal, Acosta argues: (1) that mere delay is not
reason enough to deny a motion for leave to amend; (2) that
Hilton's "lack of action forced [Acosta] to wait before amending
the complaint"; and (3) that it is only just to allow the addition
of Tropitone, who Acosta argues is likely liable for his injuries. 
 The first point is contrary to Supreme Court and circuit
precedent holding that, especially where allowing the amendment
will cause further delay in the proceedings, "undue delay" in
seeking the amendment may be a sufficient basis for denying leave
to amend. Foman, 371 U.S. at 178. See Grant, 55 F.3d at 5
(affirming denial of leave after fourteen-month delay);
Stepanischen, 722 F.2d at 933 (affirming denial of motion for leave
filed after seventeen-month delay); Hayes, 602 F.2d at 19 ("[I]t is
clear that 'undue delay' can be a basis for denial."). 
 Even if Acosta were correct that late filing of the
proposed amendment was not per se a sufficient reason to deny a
motion for leave to amend, the prejudice to Hilton resulting from
a re-opening of discovery with additional costs, a significant
postponement of trial, and a likely major alteration in trial
strategy and tactics due to the presence of the manufacturer of the
collapsing chair in addition to the hotel at which Acosta was a
guest, fully support the district court's ruling. See, e.g.,
Grant, 55 F.3d at 6 (finding prejudice from undue delay where
discovery would have to be re-opened, trial preparation was
underway, and amendment would likely change defendant's planned
trial strategy and tactics).
 Acosta's second point, cursorily argued, seems to rest on
the theory that Hilton itself may have intended to implead
Tropitone as a third-party defendant. Even if this allegation were
supported by the record which it is not we would reject
Acosta's suggestion that a party can shift its responsibility for
its own pleadings to its opponent. Acosta's counsel from the
outset included claims based upon an alleged product design defect
and an implied breach of warranty, indicating that he was aware, or
should have been aware, when filing the initial complaint that the
manufacturer of the chair was a potential defendant. If the chair
was badly designed, as alleged, the manufacturer, not the hotel,
was the more obvious defendant. Acosta betrayed actual knowledge
of Tropitone's potential liability as early as June 14, 1996, when,
in a motion to extend the discovery deadline, he asserted that
Hilton would file a third-party complaint against Tropitone over an
alleged defect in the chair. Armed with this knowledge, nothing
prevented Acosta, the master of his complaint, from then moving to
name Tropitone as a defendant other than unwarranted reliance on
his adversary. 
 Finally, Acosta's contention that he should, in fairness,
now be allowed to amend the complaint in light of Tropitone's
alleged likely liability ignores his own responsibility to have
timely asserted the claim in his own complaint, or to give some
adequate reason not to have done so. Rule 15(a)'s liberal
amendment policy seeks to serve justice, but does not excuse a lack
of diligence that imposes additional and unwarranted burdens on an
opponent and the courts. Acosta has offered no valid reason for
not adding Tropitone as a defendant either initially or more
promptly after the initial complaint was filed. Since the addition
of Tropitone at the eleventh hour would have resulted in further
significant delay both in the completion of discovery and the trial
of the case, we discern no abuse of discretion in the district
court's denial of leave to amend the complaint. 
2. Exclusion of Dr. Soderstrom's Proffered Expert Opinion
 Acosta pressed three theories of liability against
Hilton. Acosta alleged that Hilton negligently maintained the
chaise lounge. That theory was presented to the jury at trial,
which rejected it. Acosta also set forth two causes of action
based in strict products liability, (1) that the chaise lounge was
defectively designed, and (2) that Hilton had breached an implied
warranty by providing a chaise lounge that was defective.
 In support of the design defect and breach of warranty
theories, Acosta planned to call Dr. Kenneth G. Soderstrom, a
mechanical engineer, to testify that in his opinion the chaise
lounge had a design defect as manufactured. Prior to trial, Hilton
filed a motion to strike Dr. Soderstrom's testimony in its
entirety. Citing Mendoza v. Cerveceria Corona, Inc., 97 P.R.R. 487
(1969), Hilton argued that Puerto Rico law allows strict product
liability claims only against those in the business of
manufacturing or selling the allegedly defective products. Since 
Hilton was not engaged in the business of manufacturing or selling
chaise lounges, Hilton argued that Dr. Soderstrom's proffered 
testimony on design defect would be irrelevant to any viable claim
against it. Hilton moved both to dismiss as a matter of law the
products liability claims against it, and further to exclude Dr.
Soderstrom's testimony on the ground that he was not qualified to
render an expert opinion as to the design of chaise lounges. 
 The district court conducted a lengthy voir dire of Dr.
Soderstrom, during which the court posed questions concerning Dr.
Soderstrom's background, general qualifications, and specific
experience with chaise lounges including experiments he had
conducted. Dr. Soderstrom stated repeatedly that should he be
permitted to testify at trial, he would opine, in sum, that the
chaise lounge was defective in design. He was not expected to
offer any testimony in support of Acosta's claim that Hilton was
negligent in the maintenance of the chaise lounge. 
 At the completion of voir dire, the district court did
not rule on Hilton's motion to strike Dr. Soderstrom. Rather, the
court found that while Dr. Soderstrom was qualified as a "general
mechanical engineering expert without a specialization," he was not
qualified to opine specifically as to chaise lounges either under 
the standard for admission of "scientific" evidence set forth in
Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579
(1993),or pursuant to the general principles articulated in Fed. R.
Evid. 702. 
 This circuit has not yet decided whether Daubert applies
to the type of "technical" evidence proffered by Dr. Soderstrom. 
Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 476, 479
(1st Cir. 1997). We find it unnecessary to decide that issue here. 
Nor do we find it necessary to decide whether the district court
erred when it excluded Dr. Soderstrom's testimony, whether pursuant
to Daubert or the general standard set forth in Rule 702. Even if
the district court erred in excluding Dr. Soderstrom's testimony,
we conclude, for the reasons stated below, that such error was
harmless. See Bates v. Shearson Lehman Bros., Inc., 42 F.3d 79, 84
(1st Cir. 1994) (exclusion of testimony deemed harmless where
testimony would not have established viable cause of action); seealso Fed. R. Civ. P. 61. 
 In its motion for judgment as a matter of law, Hilton
renewed its contention that Puerto Rico law does not permit Acosta
to pursue its strict products liability claims against Hilton. The
district court rendered inconsistent rulings on this issue. The
court first appeared to reject Hilton's argument, stating:
 But they [Hilton] charge for the guests and
 they use the chaise lounge. So, forget about
 it. If the plaintiffs establishes [sic] or
 the evidence establishes that it could have
 been defective, the fact that they didn't
 manufacture doesn't mean anything, because
 they are making money out of that product. 

The court did not cite any authority for this ruling. Later, in
dismissing Acosta's strict liability claims, the district court
stated that it was "granting the defendant's Rule 50 motion as it
pertains to strict liability as there is no strict liability for
the hotels in Puerto Rico, as per Puerto Rico case law." (Emphasis
supplied). The court did not elaborate with citation to authority
or otherwise. 
 The district court's latter ruling was correct. Since
this is a diversity case, we follow the law of Puerto Rico. SeeErie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). No Puerto Rico
case has been called to our attention that addresses whether
strict products liability claims lie against a hotel in 
circumstances analogous to those in this case. Nor has case law
been called to our attention supporting the district court's
earlier suggestion that a non-manufacturer or non-seller who
tangentially "makes money" from utilization of a product is subject
to strict products liability under Puerto Rico law if a guest or
other user is injured by the product. 
 While there is no black-letter precedent in Puerto Rico
that controls here, we find relatively clear the course that the
courts of that jurisdiction would take. Hence we see no need to
certify the question to Puerto Rico's highest court, nor have we
been asked to do so. See Vanhaaren v. State Farm Mut. Auto. Ins.
Co.,989 F.2d 1, 3 (1st Cir. 1993) ("Absent controlling state court
precedent, a federal court sitting in diversity may certify a state
law issue to the state's highest court, or undertake its prediction
'when the course [the] state courts would take is relatively
clear'")(quoting Porter v. Nutter, 913 F.2d 37, 41 n.4 (1st Cir.
1990)). We find guidance by looking to "'analogous state [and,
since Puerto Rico is not a state, Puerto Rican] court decisions,
persuasive adjudications by courts of [Puerto Rico and the] states,
learned treatises, and public policy considerations identified in
[Puerto Rican and] state decisional law' in order to make an
'informed prophecy' of how the [Puerto Rico Supreme Court] would
rule." Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir.
1997) (quoting Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151
(1st Cir. 1996)). 
 The Puerto Rico courts generally embrace the principles
of strict products liability prescribed in the Restatement (Second)
of Torts 402A (1965). See Malave-Felix v. Volvo Car Corp., 946
F.2d 967, 971 (1st Cir. 1991) (citing Mendoza v. Cerveceria Corona,
Inc., 97 P.R.R. 487, 495-96 (1969)); Perez-Trujillo v. Volvo Car
Corp., 137 F.3d 50, 52 (1st Cir. 1998). Section 402A applies 
strict liability, or liability without regard to negligence, to
manufacturers and sellers of products that are in a "defective
condition unreasonably dangerous to the user or consumer . . . ." 
Section 402A applies, however, only if "the seller is engaged in
the business of selling such a product." Restatement (Second)
Torts 402A (emphasis supplied). See also W. Page Keeton et al.,
Prosser and Keeton on the Law of Torts 100 at 705 (5th ed. 1984)
("Only a seller who can be regarded as a merchant or one engaged in
the business of supplying goods of the kind involved in the case is
subject to strict liability, either on warranty or in tort."). 
This limitation serves various public policies, among them placing
the burden of accidental injuries caused by products upon those who
market them "as a cost of production against which liability
insurance can be obtained." 402A, comment c. 
 We conclude that the Supreme Court of Puerto Rico, which
has embraced generally the principles set forth in 402A, would
limit the application of strict products liability, whether for
alleged design defects or breach of implied warranty, to those "in
the business of" manufacturing or selling the product at issue. 
See Benitez-Allende v. Alcan Aluminio do Brasil, 857 F.2d 26, 34
(1st Cir. 1988) (predicting Puerto Rico law in light of fact that
"Puerto Rico . . . has chosen to adopt the principles of strict
liability laid out in [ 402A]"). Since Hilton was not in the
business of manufacturing or selling chaise lounges, Acosta had no
viable strict products liability claims against Hilton.
 We have noted that the Supreme Court of Puerto Rico has
consistently relied upon California Supreme Court precedent when
considering issues raised by the doctrine of strict product
liability. Collazo-Santiago v. Toyota Motor Corp., No. 97-1365,
1998 WL 363856, at *2 (1st Circuit Jul. 9, 1998). Our conclusion
that Puerto Rico law would prohibit Acosta's strict products
liability claims against Hilton is bolstered by our reading of
California law.
 The Supreme Court of California has specifically
addressed the issue raised by Hilton. In Peterson v. Superior
Court, 899 P.2d 905 (Cal. 1995) (in bank), a hotel guest injured
when she fell in a bathtub in her room sued, among others, the
hotel owner alleging claims of negligence and breach of warranty. 
The Supreme Court of California held that the proprietor of a hotel
cannot be held strictly liable on the basis of products liability
for injuries to its guests caused by alleged defects on the
premises. Id. at 907. The court, reversing its earlier decision
in Becker v. IRM Corp., 698 P.2d 116 (Cal. 1985), held that "[t]he
mere circumstance that it was contemplated customers . . . would
use the products in question or be benefitted by them does not
transform the owners of the businesses into the equivalent of
retailers of the products." Id. at 913. Because hotel owners are
not part of the chain of distribution for most products on their
premises, the court held that public policy considerations
supporting strict liability for sellers and manufacturers of
products (including the spread of loss, the availability of
expertise and resources to correct product defects, and the
incentive to manufacture safer products) do not apply in the case
of hotel owners. Id. at 918-20. The court noted that guests still
may sue hotel owners for alleged breaches of the applicable
standard of care and, of course, may sue those in the business of
manufacturing and selling products for strict products liability. 
Id. at 920-21. 
 We feel confident that the Supreme Court of Puerto Rico
would conclude, based upon the principles of 402A and the well-
reasoned Peterson decision, that it would be improper to impose
strict liability under product liability principles, whether for
alleged design defects or breach of implied warranty, upon a hotel
proprietor for injuries caused by an alleged defect in the hotel
premises that the hotel proprietor did not manufacture or market. 
Accordingly, we conclude that Acosta's strict product liability
claims against Hilton are not viable. Thus, even if the district
court erred in excluding the testimony proffered by Dr. Soderstrom
in support of Acosta's strict liability claims, any such error was
harmless. 
3. Denial of Acosta's Motion for New Trial 
 Based on Newly Discovered Evidence

 Acosta appeals from the district court's denial of his
motion for new trial based, inter alia, on what he describes as
newly discovered evidence. The "new" evidence Acosta discovered
was that Tropitone, in cooperation with the United States Consumer
Product Safety Commission ("CPSC"), had on two occasions
voluntarily recalled several models of Tropitone lounge chairs,
including the model involved in Acosta's injuries. The first such
recall occurred in 1992. The second recall was made public by the
CPSC on June 3, 1997, six days before the jury rendered its verdict
in favor of Hilton. On June 9, 1997, the same day the jury
returned its verdict, Dr. Soderstrom learned of the CPSC recall and
informed counsel for Acosta. Before the district court and on
appeal, Acosta argues that evidence of the recall warrants a new
trial. We disagree.
 To warrant granting a new trial based on newly discovered
evidence, the movant must demonstrate that (1) the evidence has
been discovered since trial; (2) the evidence could not by due
diligence have been discovered earlier; (3) the evidence is not
merely cumulative or impeaching; and (4) the evidence is of such a
nature that it would probably change the result if a new trial is
granted. Duffy v. Clippinger, 857 F.2d 877, 879 (1st Cir. 1988). 
An order denying a motion for a new trial must be upheld unless the
trial court abused its discretion. D. Federico Co. v. New Bedford
Redevelopment Auth., 723 F.2d 122, 130 (1st Cir. 1983). 
 Given our conclusion, supra, that Acosta had no viable
claims against Hilton for design defect and breach of warranty, we
conclude that evidence of the Tropitone recalls would not change
the result even if a new trial were to be granted. The only viable
claim pleaded by Acosta and presented to the jury was that Hilton
negligently maintained the chaise lounge. Evidence that Tropitone
recalled certain lounge chairs in 1992 and 1997 does not bear on
that claim. 
 We add that even if Acosta had viable products liability
claims against Hilton, we would uphold the district court's denial
of Acosta's motion for a new trial. We agree with the district
court that with due diligence Acosta would have discovered both the
recalls before trial. Tropitone initially recalled several of its
lounge chair models in 1992, well before Acosta injured his finger. 
Acosta could have included Tropitone as a defendant, see supra, and
easily obtained information about the 1992 recall through
discovery. Moreover, as a defendant, Tropitone would have been
subject to a continuing duty to supplement its discovery responses. 
See Fed. R. Civ. P. 26(e). Thus, Acosta could also have readily
obtained information concerning the impending 1997 recall from
Tropitone prior to trial. 
 Acosta claims that he exercised due diligence in
propounding an interrogatory to Hilton about the condition of its
chairs asking for, inter alia, "[t]he alleged evidentiary facts of
which you have knowledge that show or tend to show that said [and
unspecified] third party or instrumentality may have been
negligent." Hilton's response stated that "[e]fforts are being
made to determine whether the manufacturers of the chaise lounge
were negligent in the design or manufacture of it." The record
contains no evidence that this response was not accurate. 
Moreover, a duly diligent approach to discovery would involve more
than propounding a single, open-ended discovery request to Hilton
concerning information readily available from Tropitone. The
course was available to Acosta to name Tropitone as a defendant in
a timely fashion and to employ the panoply of discovery devices to
explore all aspects of the design defect and breach of warranty
claims, including all facts relating to any recalls of the chaise
lounges. We agree with the district court that due diligence would
have uncovered evidence of Tropitone's recalls prior to trial and
that a new trial was therefore unwarranted.
4. Evidentiary Issues
 Acosta challenges two evidentiary rulings made by the
district court. We review the district court's evidentiary rulings 
for abuse of discretion. Rodriguez-Hernandez v. Miranda-Velez, 132
F.3d 848, 855 (1st Cir. 1998). We find no merit in Acosta's claims 
of error. 
 Acosta challenges the exclusion of the testimony of Naomi
Nobel. Ms. Nobel became manager of the Caribe Hilton's swimming
and tennis facilities nine months after Acosta's accident. Acosta
proffered that Ms. Nobel would testify regarding the maintenance of
the chaise lounges at the time of the accident.
 The district court excluded Ms. Nobel's testimony on the
ground that she had no personal knowledge concerning the
maintenance of the chaise lounges at the time of the accident. The
testimony proffered to the court consisted of statements made to
Ms. Nobel by others who had knowledge of the maintenance of the
chairs during the relevant time period. Under these
circumstances, the district court properly excluded the proffered
testimony as inadmissible hearsay not fitting within any exception
to the hearsay rule. See Fed. R. Evid. 801, 803-804. 
 Acosta also contends that the district court erred when
it excluded eighteen photographs of chaise lounges. The
photographs were taken by Acosta after the accident and attached to
a notarized document. When Acosta failed to authenticate the
photographs during his testimony, he argued that the photographs
were admissible absent authentication under Rule 902(4). We agree
with the district court's ruling that a notarized document does not
constitute "[a] copy of an official record or report or entry
therein, or of a document authorized by law to be recorded or filed
and actually recorded or filed in a public office . . . Fed. R.
Evid. 902(4). Moreover, Rule 902 addresses only the requirement of
authentication. "Self-authenticating" documents are not
necessarily admissible. The district court excluded the
photographs pursuant to Fed. R. Evid. 401 and 403 on the grounds
that none of them depicted the chair involved in the accident, and
all depicted the condition of the chaise lounges after the
accident. The district court's exclusion of the photographs under
these circumstances was a proper exercise of discretion.
 Affirmed.