Diana COLLAZO–SANTIAGO,
Plaintiff—Appellee,

v.

TOYOTA MOTOR CORP., Defendant—
Appellant.

No. 97–1365.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1997.

Decided July 9, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 17, 1998.

Jay M. Smyser, with whom Antonio Gnocchi Franco was on brief for appellant.

Bowman and Brooke LLP, Hildy Bowbeer and Hugh F. Young, Jr., on brief for Product Liability Advisory Council, amicus curiae.

Jorge Miguel Suro Ballester for appellee.

Before TORRUELLA, Chief Judge, CYR, Circuit Judge, and DiCLERICO,* District Judge.

DiCLERICO, District Judge.

The plaintiff-appellee, Diana Collazo–Santiago, received a jury verdict against the defendant-appellant, Toyota Motor Corporation, in this strict products liability case. On appeal, the defendant raises, *inter alia,* the following arguments: the district court applied an incorrect legal standard; the plaintiff failed to establish an element of her case; and the district court erred in its denial of the defendant's motion to dismiss because of the plaintiff's spoliation of evidence. Having considered the arguments of the defendant and of the amicus brief filed by the Products Liability Advisory Council, we affirm.

### Background [1]

On August 13, 1994, the plaintiff was driving a 1994 Toyota Corolla when she was involved in a high speed multi-automobile accident. Struck initially from behind, her automobile was propelled forward into the vehicle in front of it and the air bags in her car deployed. The plaintiff suffered abrasions to her face that resulted in second degree burns.

In January 1995, the plaintiff filed this action against the defendant asserting, in part, that her abrasions were caused by the air bags in the automobile, that the air bags were defectively designed, and that the defendant was liable under a theory of strict products liability. Confronted with an open question of Puerto Rico strict products liability law, the district court applied a rule of law under which a plaintiff prevails in a design defect case if the plaintiff establishes that the product's design proximately caused her injury and the defendant fails to establish that the benefits of the design outweighed its risks.

Prior to trial, the defendant asserted that the plaintiff's failure to preserve the automobile for the defendant's inspection was prejudicial and warranted dismissal of the plaintiff's complaint. The district court denied the motion to dismiss.

At trial, the plaintiff testified that she had been wearing her seat belt at the time of the accident and that she did not come into contact with the steering wheel or any other part of the interior of her car. Her dermatologist testified that her injuries were second degree burns due to abrasions and that they were inconsistent with a traumatic impact with a blunt object. Although the plaintiff did not supply her own expert witness on air bags, she elicited testimony from defendant's expert that abrasions and burns had been associated with air bag deployment in professional literature. The defendant's expert witness also testified that despite the severe injuries that may result from air bag deployment, they have significantly reduced injuries and fatalities from car accidents. Moreover, he opined that there is no feasible alternative design for the air bags that would reduce the danger posed by their high speed deployment while maintaining their efficacy.

The jury returned a $30,000 verdict for the plaintiff.[2] On appeal, the defendant contests, *inter alia:* (1) the district court's formulation of Puerto Rico strict products liability law for design defect cases; (2) the sufficiency of the plaintiff's evidence; and (3) the district court's spoliation ruling. The court discusses these claims *seriatim.*

---

* Of the District of New Hampshire, sitting by designation.

1. The court summarizes the facts in the light most favorable to the non-moving party. *See Morrison v. Carleton Woolen Mills, Inc.,* 108 F.3d 429, 432, 436 (1st Cir.1997).

2. The court notes that the district court granted the defendant's Rule 59(e) motion to reduce the plaintiff's award pursuant to the Automobile Accident Compensation Act of Puerto Rico. *See* P.R. Laws Ann. Tit. 9, § 2058 (1976). This decision has no bearing on this appeal.

*Discussion*

## I.  Strict Products Liability Under Puerto Rico Law

The parties do not dispute that Puerto Rico law controls the issue of strict products liability for a design defect in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Puerto Rico legislature has yet to codify the Commonwealth's law governing strict products liability. *See Rivera Santana v. Superior Packaging, Inc.*, No. RE–89–593, —— P.R. Offic. Trans. ——, slip op. at 5 n.4, 1992 WL 754830 (P.R. Dec. 9, 1992). Although the Supreme Court of Puerto Rico has not explicitly pronounced the legal standard governing design defect cases, the district court denied the defendant's motion to certify the question to the Supreme Court of Puerto Rico, finding the path that court would take reasonably clear. *See Collazo–Santiago v. Toyota Motor Corp.*, 937 F.Supp. 134, 138 (D.P.R.1996). The defendant alleges that the district court applied an improper rule of law. The court reviews this question *de novo*. *See MCI Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 428 (1st Cir.1998).

"Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court, or undertake its prediction 'when the course [the] state courts would take is reasonably clear.'" *VanHaaren v. State Farm Mut. Auto. Ins. Co.*, 989 F.2d 1, 3 (1st Cir. 1993) (quoting *Porter v. Nutter*, 913 F.2d 37, 41 n. 4 (1st Cir.1990) (itself quoting *Bi–Rite Enters., Inc. v. Bruce Miner Co.*, 757 F.2d 440, 443 n. 3 (1st Cir.1985))). This court agrees with the district court that the likely direction of the Supreme Court of Puerto Rico is reasonably evident.

Since its adoption of the doctrine of strict products liability in *Mendoza v. Cervecería Corona, Inc.*, 97 D.P.R. 499 (1969), the Supreme Court of Puerto Rico has embraced the formulation of that doctrine first set forth by the California Supreme Court in *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 901 (1963). As it has revisited the issue of Puerto Rico strict products liability law, the Supreme Court of Puerto Rico has consistently relied upon California Supreme Court precedent. In *Montero Saldaña v. American Motors Corp.*, R–77–203, —— P.R. Offic. Trans. ——, slip op., 1978 WL 48845 (P.R. May 31, 1978), for example, the Supreme Court of Puerto Rico relied upon California Supreme Court precedent in rejecting the requirement that the defect be "unreasonably dangerous to the user or consumer;" in finding strict liability applicable to both manufacturing and design defect cases; and in holding principles of comparative fault applicable to strict products liability cases. *See id.* at 8, 10–12. Again, in *Rivera Santana v. Superior Packaging, Inc.*, the Supreme Court of Puerto Rico relied extensively on *Greenman* and other California cases as it identified three types of product defects that could result in strict products liability: manufacturing defects, design defects, and defects arising from inadequate warnings or instructions. *See* slip op. at 8. It then explicitly adopted *Greenman*'s definition of a manufacturing defect and provided a legal standard for inadequate warnings or instructions drawn from California Supreme Court cases. *See id.* at 8, 10. Indeed, in *Rivera Santana*, the Supreme Court of Puerto Rico acknowledged its embrace of California's doctrine of strict products liability, stating the following: "Both [*Mendoza* and *Montero Saldaña*] cited with approval the strict liability in torts rule set down by the California Supreme Court in [*Greenman*]." *Id.* at 6.

The Supreme Court of Puerto Rico's first extended discussion of strict products liability for design defects was also in *Rivera Santana*. In the decision, the court referred exclusively to a two-part test articulated by the California Supreme Court in *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978). *See Rivera Santana*, slip op. at 9, 10.  Pursuant to the test, a successful plaintiff in a design defect case must establish that:

> 1) "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner[,]" or ... 2) "the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance,

the benefits of the challenged design outweigh the risk of danger inherent in such design."

*Id.* at 9 (quoting *Barker*, 143 Cal.Rptr. 225, 573 P.2d at 455–56).

■ Although in *Rivera Santana* the court stopped short of explicitly adopting the two-part test, in *Aponte Rivera v. Sears Roebuck, Inc.*, the Supreme Court of Puerto Rico revisited the issue of strict products liability for design defects. *See* Nos. RE–92–436, CE–92–537, —— P.R. Offic. Trans. ——, slip op., 1998 WL 324486 (P.R. Apr. 02, 1998). In *Aponte Rivera*, which was decided after oral argument was heard in this case, the Supreme Court of Puerto Rico provided that a design is defective

when a product fails to perform as safely as would be expected by an ordinary user when the product is being used for its intended use or for which it could foreseeably be used, or when the product design is the proximate cause of the damages and defendant fails to show that in the balance of interests the benefits of the design in question surpass the inherent risks of danger in the design.

*Id.* at 10, 29 n. 9 (citing *Rivera* ). Although the adoption of the two-part test is not necessary to the outcome of *Aponte Rivera*, the court finds that taken together, the case law cited above provides a "reasonably clear" indication of the direction of the Supreme Court of Puerto Rico. The court therefore holds that the district court's adoption of the two-part test articulated in *Barker* and recited in *Rivera Santana* and *Aponte Rivera* accurately reflects the Supreme Court of Puerto Rico's likely decision if confronted with the issue at hand.

■ In its application of the two-part test for a design defect, the district court required the plaintiff to prove that she was injured and that the design was the proximate cause of her injuries.[3] At this point, the burden shifted to the defendant to establish that the benefits of the design outweighed its risks. As identified in *Barker*,

factors to be considered by the jury in conducting this evaluation are

the gravity of the danger posed by the challenged design, the likelihood that such a danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.

*Barker*, 143 Cal.Rptr. 225, 573 P.2d at 455; *see also Rivera Santana*, slip op. at 9 n.9. Insofar as the court anticipates that the Supreme Court of Puerto Rico would adopt the two-part test, we also anticipate that the feasibility of a safer alternative design would be a factor relevant to the defendant's burden to prove that the design's benefits outweighed its risks. *See Barker*, 143 Cal.Rptr. 225, 573 P.2d at 455.

Both the amicus brief submitted by the Product Liability Advisory Council and the defendant's brief seek to persuade this court either (1) that a rule of law more closely resembling the rule of law in the *Restatement (Second) of Torts* § 402A (1965) or the *Restatement (Third) of Torts: Products Liability* (proposed final draft, April 1, 1997) (adopted May 20, 1997) should be adopted, or (2) that additional elements should be grafted upon the plaintiff's *prima facie* case. However, in explicating state law for the purposes of a diversity action, "[o]ur function is not to formulate a tenet which we, as free agents, might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow." *Porter*, 913 F.2d at 40–41 (alteration in original) (citations omitted). The court finds, as stated above, that the rule of law the Supreme Court of Puerto Rico would adopt is reasonably clear. The district court did not err in its conclusion.

## II. *Sufficiency of the Evidence*

The defendant challenges the sufficiency of the evidence adduced by the plaintiff to establish the element of causation. At trial, the district court initially reserved judgment on the defendant's motions for judgment as a

---

**3.** The district court found the first part of the two-part test inapplicable in the instant case, and

this decision is not contested here.

matter of law pursuant to Federal Rule of Civil Procedure 50(a), and later rejected the defendant's renewed Rule 50(b) motion.

On appeal, we review a district court's grant or denial of a defendant's motion for judgment as a matter of law *de novo*. *See McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 299 (1st Cir.1998). "The standard of review for motions for judgment as a matter of law requires us to view the evidence 'in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor.'" *Id.* (quoting *Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 436 (1st Cir.1997)). "A verdict may be directed only if the evidence, viewed from this perspective, 'would not permit a reasonable jury to find in favor of the plaintiff[ ] on any permissible claim or theory.'" *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1186 (1st Cir. 1996) (alteration in original) (quoting *Murray v. Ross–Dove Co.*, 5 F.3d 573, 576 (1st Cir. 1993)).

At trial, the plaintiff testified on cross-examination that her seat was in a normal upright position in the car and that she was using her seat belt at the time of the accident. In response to slowing cars in front of her, the plaintiff applied her brakes but was struck from behind, at which point she collided with the car in front of her. She was sitting in a normal position at all times during the accident. When her car came to a stop, the cabin was filled with a smoke-like substance and both air bags had deployed. The plaintiff felt a burning sensation on her face immediately after the accident, and her lips and face began to swell. The plaintiff attributed these injuries to the air bags; she "knew that [she] hadn't hit [herself] with anything else" as she did not perceive any impact between her body and anything else in the car. Trial Tr. of July 30, 1996 at 41, 44, 59–60 (hereinafter "Tr. of 7/30").

The plaintiff also presented the testimony of Dr. Charneco, unchallenged as an expert in the field of dermatology, who treated the plaintiff two days after the accident. His diagnosis was "second a[sic] degree burn caused by abrasions." Tr. of 7/31 at 10. He also testified that the injury was not consistent with an impact with a blunt object as there was no hematoma.

Finally, the plaintiff elicited the following testimony from the defendant's expert witness: (1) the witness had previously been employed for over six years by the defendant in its legal department as a mechanical engineer consulting with attorneys regarding lawsuits; (2) the witness was at the time of trial an independent consultant, but had testified for the defendant or its associated corporations thirty-six times in the preceding two years; (3) the thirty-six cases represented approximately eighty percent of the cases that the witness had testified in over the preceding two years; (4) the witness was being paid $215 an hour by the defendant; (5) the deployment of the air bag, "the opening process where the bag punches out," occurs very rapidly, with considerable force at high speed, *id.* at 38; (6) the deployment of the air bag could cause severe injury, including but not limited to, death, head injury, broken bones, and severe bruising; (7) the witness was aware of literature that associated air bags with abrasions and friction burns, *see id.* at 37; and (8) there was no minimum distance the driver of an automobile could be from the air bag at which there would be no risk of injury from deployment, *see id.* at 50–52. The witness also testified that given the constraints surrounding the functioning of the air bag, there was no way to slow its deployment, to cushion or block the driver, and to have it deflate quickly. *See id.* at 101.

From the evidence adduced by the plaintiff, a reasonable jury could find that it was more likely than not that the deployment of the air bags caused the friction burns on the plaintiff's face.[4] At this point, the burden shifted to the defendant to establish that the benefits of the design outweighed its risks. In this regard, the court

---

4. The court rejects the argument advanced in the amicus brief that the evidence adduced by the plaintiff failed to sufficiently relate her injuries to a feature of the design of the air bag because the jury reasonably could have inferred that the injuries were caused by the deployment of the air bags.

rejects the argument that the jury was unreasonable in finding that the risks of the design outweighed its benefits. The jury was not required to believe the testimony of the defendant's expert witness regarding the feasibility of an alternative design or the other *Barker* factors because the plaintiff adduced sufficient evidence for the jury to find that the defendant's expert was an interested witness. *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2527 at 286 (1995) (a "jury is required to believe, and the judge therefore may accept as true on a motion, uncontradicted and unimpeached evidence from disinterested witnesses"); *Sonnentheil v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408, 19 S.Ct. 233, 43 L.Ed. 492 (1899) ("[T]he mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact").[5] The court concludes that the evidence was sufficient for the jury to find in the plaintiff's favor.[6]

## III. *Spoliation*

After the plaintiff's accident, but prior to the defendant's inspection of the subject vehicle, the plaintiff's insurance company declared the plaintiff's vehicle a total loss and sold it at public auction. Although the purchaser of the automobile was recorded, the parties were unable to locate the new owner of the vehicle. The defendant therefore moved to have the case dismissed on the ground that it was prejudiced by its inability to inspect the automobile. In denying the defendant's motion to dismiss, the district court distinguished between manufacturing defects, where a specific product is uniquely defective because of a mistake in the manufacturing process, and design defects, where each and every product is defective, despite being manufactured according to specifications, because the defect is in the design of the product. The district court determined that in the case of this alleged design defect, proof or refutation of the plaintiff's claim could be supported by evidence other than the vehicle itself and that the defendant would not be unduly prejudiced by the loss of the automobile. The defendant appeals the district court's refusal to dismiss the complaint. We review the district court's determination that dismissal was unwarranted for abuse of discretion. *See United States v. Sherlock*, 962 F.2d 1349, 1354 (9th Cir.1989).

"Under settled authority, the district court has inherent power to exclude evidence that has been improperly altered or damaged by a party where necessary to prevent the non-offending side from suffering unfair prejudice." *See Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir.1997). In this case, however, the defendant only moved for dismissal and not for a sanction restricting the evidence admitted. As a general principle, the court views "[d]ismissal with prejudice '[as] a harsh sanction[,]' which runs counter to our 'strong policy favoring the disposition of cases on the merits.'" *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 107 (1st Cir.1995) (citations omitted) (dismissal for failure to prosecute).

---

**5.** The amicus curiae also urges the court to extend the reasoning of the California Supreme Court in *Brown v. Superior Court,* which excepted a drug manufacturer from strict products liability for a defectively designed drug, to the case at hand. *See* 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988). The court declines the invitation to extend this narrow exception to strict products liability embraced by certain jurisdictions to this case, particularly on the record below.

**6.** The defendant also characterized its Rule 50(b) motion as a motion for a new trial pursuant to Rule 59. In reviewing a district court's decision regarding a motion for a new trial under Rule 59(a), "we will reverse a judge's decision not to grant a motion for a new trial 'only if the verdict is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice.... This strict standard of review is especially appropriate if the motion for a new trial is based on a claim that the verdict is against the weight of the evidence.'" *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir.1989) (quotations omitted); *see also Transamerica Premier Ins. v. Ober*, 107 F.3d 925 (1st Cir.1997). The defendant has not clearly distinguished which arguments are pertinent to which motion, nor has it identified how a Rule 59(a) standard of review would produce a different outcome. In any event, the court finds that the jury's verdict does not constitute a miscarriage of justice.

The intended goals behind excluding evidence, or at the extreme, dismissing a complaint, are to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence. *See Sacramona*, 106 F.3d at 446. Therefore, of particular importance when considering the appropriateness of sanctions is the prejudice to the non-offending party and the degree of fault of the offending party. *See id.* at 447.

Here, the fact that the plaintiff asserted a design defect claim and not a manufacturing defect claim is relevant to the degree of prejudice the defendant experienced by the loss of the automobile. Clearly, if a product was manufactured defectively, its defect is likely to be particular to the individual product. Consequently, a party's examination of that product may be critical to ascertaining, among other things, the presence of the defect. In design defect cases, however, a party's examination of the individual product at issue may be of lesser importance as the design defect alleged can be seen in other samples of the product. Nevertheless, examination of the individual product in question may still be of significant import in certain design defect cases where, for example, the question whether the alleged defect or some other factor caused a particular injury is at issue.

In the case at hand, the defendant identified a number of issues relevant to its defense that inspection of the vehicle may have resolved.[7] However, evidence as to many of these issues could also have been attained through other means, such as through the testimony of the plaintiff and other persons involved in the accident, through photographs of the car after the accident, and through accident reconstruction. The plaintiff neither maliciously destroyed evidence nor deliberately attempted to prevent the defendant from inspecting the vehicle. Indeed, the plaintiff's insurance company sold the car to a third party without the plaintiff's knowledge or consent and the defendant was given the name of the third party who purchased the vehicle. The defendant moved solely for dismissal, and under the circumstances of this case, we cannot say that the district court abused its discretion in refusing to dismiss the complaint.

### Conclusion

The court finds "any residuum of claimed errors to be without merit and unworthy of extended discussion." *Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir.1998). Because the district court and the jury acted properly within the limits of their authority, the court *affirms* the outcome below. Costs are awarded to the appellee.

---

7. These include: (1) Whether the air bags exploded; (2) What kind of impact forces were involved in this accident; (3) At what speed did the accident occur; (4) Whether there was more than one impact; (5) What was the angle of the impact; (6) Whether the plaintiff was using her seatbelt in a proper fashion; (7) What damages would the plaintiff have suffered without the air bag; (8) Whether the damages were suffered as a natural result of the magnitude of the accident; (9) Whether the vehicle was properly maintained; and (10) Whether the air bags operated according to design and specifications.