USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

 

No. 98-2095

 RANDY BRITTON,

 Plaintiff, Appellee,

 v.

 PATRICK J. MALONEY, INDIVIDUALLY AND IN HIS OFFICIAL
 CAPACITY AS POLICE OFFICER OF THE CITY OF BOSTON,

 Defendant, Appellant.

No. 98-2096

 RANDY BRITTON,
 
 Plaintiff, Appellant,
 
 v.
 
 PATRICK J. MALONEY, INDIVIDUALLY AND IN HIS OFFICIAL
 CAPACITY AS POLICE OFFICER OF THE CITY OF BOSTON,
 
 Defendant, Appellee.
 
 
 
 
 APPEALS FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 [Hon. Nancy Gertner, U.S. District Judge]
 
 
 
 Before
 
 Boudin, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 

 Andrea W. McCarthy, with whom Merita A. Hopkins, Christian Na,
and David Johnson were on brief, for defendant.
 Randy Britton, plaintiff, pro se.

November 8, 1999

 STAHL, Circuit Judge. Randy Britton filed this lawsuit
in order to redress alleged violations of his civil rights that
took place after he walked into a police station carrying a rifle
in his hands. On motions for summary judgment and for judgment as
a matter of law, the district court dismissed many of the
defendants and several of the claims made in the case. Ultimately,
a jury rendered a verdict against one of the defendants, Patrick
Maloney, in the amount of $200,000.00. This appeal followed, in
which Maloney seeks to overturn the judgment against him while
Britton hopes to revive some of his unsuccessful causes of action. 
For the reasons set forth below, we affirm in part, reverse in
part, and remand for further proceedings.
 I.
 Background
 All of the questions before us require that we read the
record in the light most favorable to Britton. See Collazo-
Santiago v. Toyota Motor Corp., 149 F.3d 23, 27 (1st Cir. 1998)
(reviewing the grant or denial of judgment as a matter of law by
considering the evidence in the light most favorable to the
nonmoving party); St. Hilaire v. City of Laconia, 71 F.3d 20, 24
(1st Cir. 1995) (reviewing the entry of summary judgment by taking
the facts in the light most favorable to the nonmoving party).
 On June 30, 1990, Britton walked into the headquarters of
the Boston Police Department carrying an AR-7 semiautomatic rifle. 
The first police officer to see him thought that he was a gunman
and pushed a panic button on her desk in order to get help. 
Detective Thomas Dooley confronted Britton, grabbed him, and
wrested the rifle away. Although Sergeant Patrick Maloney joined
in the fray as well, the situation resolved itself without injury. 
It turned out that the gun was unloaded and that its stock had been
removed.
 Britton immediately explained to the officers that he had
come inside in order to flee from two people who had been chasing
him. Sergeant Maloney concluded that Britton should "go upstairs
[with him] and talk about it." He escorted Britton through a metal
gateway, up a flight of stairs, and into a squad room for further
questioning. Britton adhered to his story throughout the brief
interrogation that followed. He also produced a Firearm
Identification Card (an "FID card") to validate his possession of
the rifle.
 After removing an ammunition clip and car keys from
Britton's pocket, Detective Dooley left the building to find out
more. He began by examining Britton's car and collected some of
the items that he found inside, including the stock of the rifle,
a box of ammunition, and the registration for the vehicle itself. 
At some point thereafter, Dooley also interviewed Britton's alleged
pursuers, Tammy Loughlin and Tyrone Stampley. They had apparently
chased Britton after mistaking him for someone else.
 In any event, Maloney and Dooley verified the
authenticity of Britton's FID card, determined that he did not have
any outstanding warrants against him, and allowed him to leave the
police station. At that point, neither Britton, Loughlin, nor
Stampley was charged with a crime. None of them was told that they
were the subject of a criminal investigation. But when Britton
demanded to get his rifle back, Maloney refused, saying that he
would have to confiscate it "for safekeeping."
 Britton left the station with a copy of Dooley's police
report, which purported to document the incident and effectively
served as a receipt for the seizure of the rifle. Still angry at
the way that he had been treated, Britton telephoned Maloney that
evening, demanded that the gun be returned, and threatened to sue
in order to get it back. Maloney refused to release the weapon but
offered little explanation as to why he had decided to keep it.
 Three days later, on July 3, 1990, Britton returned to
the police station, where he confronted Maloney and claimed that
the seizure of his rifle had violated his Fourth Amendment rights. 
Rather than giving the gun back, Maloney informed Britton that he
faced criminal charges for using it to assault Loughlin and
Stampley. Subsequently, Britton received a summons in the mail, 
appeared at his arraignment on August 3, 1990, and entered a plea
of not guilty to the charges.
 Britton's court-appointed attorney moved for a bill of
particulars. The prosecution failed to respond to the motion or to
pursue the case in any meaningful way. As a result, on September
25, 1990, the Boston Municipal Court dismissed the case in its
entirety for want of prosecution. Britton's rifle was returned to
him immediately thereafter.
 Britton subsequently filed this lawsuit pro se against
the City of Boston, the mayor, the police commissioner, and several
of the police officers who had been involved at the station. The
gravamen of Britton's Amended Complaint was that (1) the defendants
fabricated criminal charges against him in order to penalize him
for complaining about the confiscation of his rifle; (2) the
defendants took the rifle away without sufficient justification for
doing so; and (3) the Boston Police Department's policy on the
seizure of firearms is unconstitutional because it directs police
officers to seize guns that they encounter without regard to
probable cause.
 Even though the district court dismissed several of the
defendants and many of the claims in the lawsuit on motions for
summary judgment and for judgment as a matter of law, Britton's
case against Dooley and Maloney went to the jury. Dooley prevailed
on all of Britton's claims against him. Maloney, however, was
found liable in the amount of $200,000.00 for having "violated
[Britton's] federal civil rights by prosecuting him without
probable cause and with an unconstitutional motive." The jury
also rendered a verdict against Maloney on a variety of parallel
state law claims, but awarded $0.00 damages.
 Although Britton's lawsuit against the city is still
pending, the district court has certified his case against Maloney
as a separate and final judgment from which an immediate appeal can
be taken. See Fed. R. Civ. P. 54(b). Maloney disputes his
liability altogether, while in his cross-appeal, Britton seeks to
revive some of the claims that the trial court rejected.
 II.
 We consider Maloney's assignments of error first. 
Maloney begins by arguing that the district court erred in denying
his motion for judgment as a matter of law with respect to
Britton's constitutional malicious prosecution claim. De novo
review is required. See Collazo-Santiago v. Toyota Motor Corp.,
149 F.3d 23, 27 (1st Cir. 1998). We evaluate the evidence in the
light most favorable to Britton, drawing every reasonable inference
in his favor. See id.
 Britton's constitutional malicious prosecution claim
turned on the theory that Maloney's pursuit of unfounded criminal
charges against him violated his Fourth Amendment rights. Although
a plurality of the Supreme Court has concluded that the Due Process
Clause of the Fourteenth Amendment does not provide a substantive
right to be free from criminal prosecutions unsupported by probable
cause, the Court has "express[ed] no view" as to whether the burden
of baseless criminal charges might effect an unlawful "seizure" and
thereby trigger a Fourth Amendment claim. Albright v. Oliver, 510
U.S. 266, 274-75 (1994) (plurality opinion).
 Every circuit to have considered the question since
Albright has expressed general agreement with the view that state
actors who pursue malicious prosecutions against others may be held
to have violated the Fourth Amendment, thereby risking the
imposition of liability under 42 U.S.C. 1983. We have yet to
confront the issue directly, see Meehan v. Town of Plymouth, 167
F.3d 85, 88 (1st Cir. 1999) ("[T]here is a possibility that
Meehan's 1983 malicious prosecution claim may be actionable under
the Fourth Amendment."); Roche v. John Hancock Mut. Life Ins. Co.,
81 F.3d 249, 256 n.5 (1st Cir. 1996) ("[W]e need not explore this
virgin territory."), and need not do so here. We will simply
assume, for the purposes of the analysis, that the type of conduct
which constitutes a malicious prosecution under state law can
sometimes constitute a violation of the Fourth Amendment as well. 
Cf. Carey v. Piphus, 435 U.S. 247, 258 (1978) ("In some cases, the
interests protected by a particular branch of the common law of
torts may parallel closely the interests protected by a particular
constitutional right."). Even if we take this assumption to be
true, we do not believe that Maloney's pursuit of baseless criminal
charges violated Britton's Fourth Amendment rights in this case.
 To acknowledge similarities between a malicious
prosecution claim and a Fourth Amendment claim is not to say that
the two causes of action are identical in every respect, or that
proof of the former will always suffice as proof of the latter. 
After all, the Fourth Amendment does not speak of unreasonable
"prosecutions," and instead refers only to unreasonable "searches
and seizures." U.S. Const. amend. IV ("The right of the people to
be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures, shall not be violated, and no
Warrants shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be searched,
and the persons or things to be seized." (emphasis added)). For a
state actor to violate the Fourth Amendment by initiating a
malicious prosecution against someone, the criminal charges at
issue must have imposed "some deprivation of liberty consistent
with the concept of [a] 'seizure.'" Singer, 63 F.3d at 116. The
crux of the inquiry is whether a "seizure" occurred, for as we have
stated before, "the essential elements of actionable section 1983
claims derive first and foremost from the Constitution itself, not
necessarily from the analogous common law tort." Calero-Colon v.
Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir. 1995).
 Expressed differently, the constitutional violation lies
in the "deprivation of liberty accompanying the prosecution" rather
than in the prosecution itself. Gallo, 161 F.3d at 222. In many
cases, this is a distinction without a difference because the
filing of criminal charges triggers the issuance of a warrant which
leads to an arrest and thereby effects a "seizure" within the
meaning of the Fourth Amendment. See Taylor, 82 F.3d at 1561 n.5
("In this particular case . . . the 'seizure' issue is fairly
straightforward, because Mr. Taylor remained in detention, and
therefore effectively 'seized,' throughout the time period in
question."). But here, Britton was never arrested or detained on
the underlying criminal charges that form the basis of his
malicious prosecution claim. After Maloney filed the criminal
complaint against him, Britton received a summons in the mail. No
warrant was required to secure his appearance at the hearings in
his case. Against this background, the narrow question before us
is whether a state actor effects a "seizure" within the meaning of
the Fourth Amendment by filing baseless criminal charges against
someone, even when those charges never cause the respondent to be
arrested or detained.
 Having considered the question in some detail, the
Second, Third, and Fifth Circuits have concluded that something
less than forcible detention will suffice to constitute a seizure. 
See Evans, 168 F.3d at 860-61 (holding that a seizure occurred
because the plaintiff "was fingerprinted, photographed, forced to
sign a personal recognizance bond, and required to report regularly
to pretrial services, to obtain permission before leaving the
state, and to provide federal officers with financial and
identifying information"); Gallo, 161 F.3d at 222 (holding that the
conditions of pretrial release effected a seizure because the
plaintiff was required "to post a $10,000 bond . . . to attend all
court hearings . . . to contact Pretrial Services on a weekly
basis, and . . . [to refrain] from traveling outside New Jersey and
Pennsylvania"); Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997)
(concluding that the obligation to appear in court in connection
with criminal charges, coupled with restrictions on interstate
travel, amounted to a seizure), cert. denied, 118 S. Ct. 1051
(1998).
 But unlike in Evans, Gallo, and Murphy, Britton's
criminal prosecution in this case did not impose any restrictions
on his liberty other than the legal obligation to appear in court
at a future date. As we have stated, Britton merely received a
summons in the mail. He was never arrested on the charges at
issue. Nothing in the record indicates that he had to post a bond
or to limit his travel before the ultimate hearing in which those
charges were dismissed for want of prosecution. Although Britton
contends that the summons alone constituted a seizure because it
threatened him with arrest if he failed to appear, see Albright,
510 U.S. at 279 (Ginsburg, J., concurring) ("Such a defendant is
scarcely at liberty . . . so long as he is bound to appear in court
and answer the state's charges."), there is no controlling
authority on point. Several circuits have expressly declined to
reach the issue. See Whiting v. Traylor, 85 F.3d 581, 584 (11th
Cir. 1996); Nesmith v. Taylor, 715 F.2d 194, 196 (5th Cir. 1983)
(per curiam).
 In our view, the Supreme Court's Fourth Amendment
jurisprudence belies Britton's claim that he was seized. The use
of force is certainly not required to effect a seizure. A mere
"show of authority" can suffice. Terry v. Ohio, 392 U.S. 1, 19
n.16 (1968). But Terry cannot be read to mean that the issuance of
a summons (any more than a testimonial subpoena or a call to jury
duty) would constitute a seizure simply because it threatens a
citizen with the possibility of confinement if he fails to appear
in court. As the Court's more recent decisions make clear, neither
the use of physical force nor a show of authority amounts to a
seizure unless it results in the "intentional acquisition of
physical control" over the subject and causes a "termination of
[his] freedom of movement." Brower v. County of Inyo, 489 U.S.
593, 596-97 (1989) (emphasis added). In order for a seizure to
occur, the subject must "yield" to the assertion of authority over
him and thereby have his liberty restrained. See California v.
Hodari D., 499 U.S. 621, 626 (1991).
 Absent any evidence that Britton was arrested, detained,
restricted in his travel, or otherwise subject to a deprivation of
his liberty before the charges against him were dismissed, the fact
that he was given a date to appear in court is insufficient to
establish a seizure within the meaning of the Fourth Amendment. 
Cf. DePiero v. City of Macedonia, 180 F.3d 770, 789 (6th Cir. 1999)
(concluding that the issuance of a traffic citation did not effect
a seizure until the plaintiff failed to appear in court and was
served with a bench warrant), petition for cert. filed, - U.S.L.W.
- (Sept. 21, 1999) (No. 99-522). As a result, we conclude that
Maloney was entitled to judgment as a matter of law on Britton's
constitutional malicious prosecution claim.
 III.
 Maloney contends that the district court also erred in
refusing to grant judgment as a matter of law against Britton on
his state law malicious prosecution claim. De novo review applies. 
See Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 27 (1st
Cir. 1998).
 In order to recover for malicious prosecution,
Massachusetts requires a plaintiff to prove "that [the defendant]
instituted criminal proceedings against [him] with malice and
without probable cause and that those proceedings terminated in
[his] favor." Correllas v. Viveiros, 572 N.E.2d 7, 10 (Mass. 1991)
(citing Beecy v. Pucciarelli, 441 N.E.2d 1035, 1038 (Mass. 1982)). 
Successful termination of the underlying action is a "threshold
requirement" of the claim. Cole v. Pulley, 468 N.E.2d 652, 653
(Mass. App. Ct. 1984). Maloney contends that Britton's malicious
prosecution action was facially deficient in this regard because
the criminal charges against him were dismissed for want of
prosecution without any inquiry into the merits.
 Massachusetts courts historically regarded malicious
prosecution claims with disfavor because of their "tendency to
deter men who know of breaches of the law, from prosecuting [the]
offenders." Cloon v. Gerry, 79 Mass. 201, 202 (1859). Consistent
with this view, Massachusetts law held plaintiffs strictly to each
element of the cause of action. See Stone v. Crocker, 41 Mass. 81,
83 (1833) (warning that the "true principles" of a malicious
prosecution claim must be "strictly adhered to"). In order to
establish that the underlying proceedings terminated in his favor,
a plaintiff who sought to recover for malicious prosecution had to
show that he prevailed in an actual adjudication on the merits. 
See Bacon v. Towne, 58 Mass. 217, 235 (1849) ("It must appear,
before this action will lie, that the defendant in the indictment
has been fully acquitted . . . ."). A nolle prosequi was
insufficient proof of successful termination, as was the dismissal
of a complaint before trial. See Bannon v. Auger, 160 N.E. 255,
258 (Mass. 1928) ("'The effect of dismissing a complaint without a
trial is like that of quashing or entering a nolle prosequi of an
indictment. By neither of these is the defendant acquitted of the
offence charged against him, but he is only exempted from liability
on that complaint or indictment.'" (quoting Commonwealth v.
Bressant, 126 Mass. 246, 247 (1879))).
 But in Wynne v. Rosen, the Supreme Judicial Court
abandoned its long-established rule and held that a prosecutor's
decision to nolle prosequi a case or to move to dismiss would
demonstrate successful termination of the underlying action as long
as the circumstances "compel[led] an inference that there existed
a lack of reasonable grounds to pursue the prosecution." 464
N.E.2d 1348, 1351 (Mass. 1984). In adopting the position taken by
virtually every other jurisdiction to have addressed the issue, the
court concluded that a criminal defendant should not have to risk
a trial on the merits simply to preserve his ability to sue for
malicious prosecution later. See id. at 1352; see also Loeb v.
Teitelbaum, 432 N.Y.S.2d 487, 494 (App. Div. 1980) ("[T]he societal
interest [against malicious prosecution claims] cannot extend so
far as to compel individuals charged with criminal offenses -- and
who may desire civil retribution -- to resist dismissal of the
charges against them in the face of the prosecutor's failure to
prosecute and the court's desire to dismiss the complaints."),
modified on other grounds, 439 N.Y.S.2d 300 (1981), quoted in
Wynne, 464 N.E.2d at 1352.
 The circumstances surrounding Britton's case are
admittedly somewhat unique because the criminal charges against him
were dismissed by the court for want of prosecution. But as the
Wynne decision at least suggests, the fact that a criminal
prosecution is dismissed by a trial judge instead of nol prossed by
a district attorney makes little difference, see Wynne, 464 N.E.2d
at 1350 n.2 ("[W]e would reach the same result under either
banner."), as long as the circumstances remain consistent with the
innocence of the accused. Drawing every inference in Britton's
favor (as we must in reviewing the denial of Maloney's motion for
judgment as a matter of law), we agree with the district court that
Britton terminated his criminal case with success and under
circumstances that reflect his innocence.
 The facts that support this conclusion are readily
apparent. After producing an FID card for his rifle, Britton was
able to leave the police station a free man. He was given a copy
of a report that purported to include "all the important facts" and
that said nothing about an alleged assault, even though Dooley and
Maloney had already interviewed Loughlin and Stampley by then. 
Maloney spoke with Britton over the telephone that evening and
never indicated that the rifle was part of a criminal investigation
into Britton's conduct. It was only after Britton returned to the
station and heatedly demanded the rifle again that Maloney informed
him of the charges. Nevertheless, the prosecution could not
provide a bill of particulars to support the criminal complaint. 
Stampley ultimately denied that Britton had assaulted him and
denied ever making such a claim to the police.
 When viewed as a whole, these facts permitted the jury to
conclude that (1) Maloney filed the charges as a retaliatory
response to Britton's bothersome insistence on getting his rifle
back; (2) the prosecution declined to pursue the charges because
they were baseless; and (3) the criminal complaint was dismissed
accordingly. Against this background, we conclude, like the
district court, that Britton's criminal prosecution terminated in
his favor within the meaning of Massachusetts law. The district
court properly denied Maloney's motion for judgment as a matter of
law on Britton's state law malicious prosecution claim.
 IV.
 We now face a very unusual problem. The jury found in
Britton's favor on both his federal constitutional claim (which we
have rejected) and his state law malicious prosecution claim (which
we have upheld). But the jury awarded Britton $200,000.00 for the
former and $0.00 damages for the latter. Because we have set
aside the jury's determination of liability on the only claim for
which it awarded damages, while upholding its determination of
liability on a claim for which no damages were given, it might be
argued that Britton is not entitled to any recovery for the
wrongful initiation of criminal proceedings against him.
 But it appears that at trial, neither party attempted to
distinguish between the damages that Britton allegedly suffered
because of the purported seizure challenged in his federal
constitutional claim and the malicious prosecution complained of
under state law. A further complication arose when the district
judge included the following charge to the jury:
 By the way, the plaintiff is not entitled to
 double recovery. Therefore, if you award him
 damages for his suffering from, for the
 constitutional claim, the 1983 claim, you may
 not award more damages under the common law
 claim. In other words, all of these are
 allegations that pertain to the same damages.
 And you can't award double damages for each of
 these violations . . . .
Although there is no way to prove the point, it is highly likely
that the jury failed to award damages on the state law malicious
prosecution claim because it thought that any additional recovery
would duplicate the damages that it had already awarded for the
alleged violation of Britton's Fourth Amendment rights.
 The problem of guarding against double recovery is a
familiar one when multiple claims exist but separate damages on
each would be partly or wholly duplicative. If the parties
explicitly agree that the damages should be the same on each claim,
then it is easy enough to construct special interrogatories that
identify separate bases for liability but have only a single line
for damages. See, e.g., Stewart & Stevenson Servs., Inc. v.
Pickard, 749 F.2d 635, 644-45 (11th Cir. 1984). On the other hand,
when the amounts awarded could conceivably differ depending on the
claim but may also involve some overlap, verdict forms sometimes
require a separate specification of damages for each claim on which
the jury determines liability, leaving it to the judge to make the
appropriate adjustments to avoid double recovery. See, e.g.,
Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 451 n.3 (1993).
 Rather than pursuing either of these options in this
case, the district court gave an instruction whose literal effect
was to prevent the jury from awarding any state law damages at all
once it awarded damages on the federal constitutional claim. 
Although it would have taken considerable sophistication for a pro
se litigant to foresee the problem, Britton arguably should have
objected to this instruction before the jury was discharged. 
Without a contemporaneous objection to preserve the issue on
appeal, we can only reverse for "plain error," M & I Heat Transfer
Prods., Ltd. v. Gorchev, 141 F.3d 21, 23 (1st Cir. 1998) (citing
Parker v. City of Nashua, 76 F.3d 9, 14 (1st Cir. 1996)), under
standards that are very high even in criminal cases, see United
States v. Olano, 507 U.S. 725, 733-37 (1993). Pro se plaintiffs
are not ordinarily judged by any different standards.
 Yet in this instance, and with appropriate regard for the
very unusual circumstances of this case, we think that the error is
clear and that prejudice is almost certain. See Drohan v. Vaughn,
176 F.3d 17, 21 (1st Cir. 1999). Under the plain error test, the
remaining question is whether this is the extremely rare case in
which it can fairly be said that the result would create a
miscarriage of justice or undermine the integrity of the judicial
process. See id. We think that this is such a case, for in
resolving conflicting evidence on liability, the jury effectively
determined that Maloney initiated criminal proceedings against
Britton without a legitimate basis. Its award of damages on the
federal constitutional claim establishes without doubt that whether
Maloney's conduct is described as a violation of federal or state
law, he caused Britton to suffer substantial emotional distress.
 At the same time, we cannot say with absolute certainty
that absent the error, the jury would have awarded Britton damages
on the malicious prosecution claim. Wrongful seizures and wrongful
prosecutions are not identical concepts. We are even less sure
that the jury would have awarded Britton exactly $200,000.00 if it
had focused its attention solely on his state law claims. For us
to order Maloney to pay that amount despite these uncertainties
could conceivably run afoul of his Seventh Amendment rights. See
Hetzel v. Prince William County, 118 S. Ct. 1210, 1211-12 (1998)
(per curiam) (citing, inter alia, Dimick v. Schiedt, 293 U.S. 474,
486 (1935)).
 The parties have not provided us with any argument or
authority on how to handle the problem. But in our view, the best
resolution of the error is to direct a new trial on damages
pursuant to our general authority to fashion a remand in the
interest of justice. See 28 U.S.C. 2106. The new trial shall be
limited to determining compensatory damages for the emotional
distress that Britton suffered because of the initiation of
baseless charges against him. See infra note 1. In the interest
of fairness, neither party will be allowed to conduct further
discovery or to present new kinds of evidence or additional
witnesses not offered during the original trial, to prove or rebut
these damages.
 V.
 We must now consider whether the district court
erroneously granted summary judgment and judgment as a matter of
law against Britton on some of his other causes of action. We
review these decisions de novo. See St. Hilaire v. City of
Laconia, 71 F.3d 20, 24 (1st Cir. 1995) (applying de novo review to
the grant of summary judgment pursuant to Fed. R. Civ. P. 56);
Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 27 (1st Cir.
1998) (applying de novo review to the entry of judgment as a matter
of law pursuant to Fed. R. Civ. P. 50).

 A.
 Britton's attempt to revive Counts 1, 12, and 14 of the
Amended Complaint can be disposed of in short order. The district
court only certified Britton's case against Maloney as a separate
and final judgment from which an immediate appeal could be taken. 
See Fed. R. Civ. P. 54(b). But Count 1 of the Amended Complaint
does not implicate Maloney at all. It alleges instead that the
City of Boston, the mayor, and the police commissioner are liable
for maintaining an unconstitutional policy with respect to the
seizure of firearms. With Britton's case against the city still
pending, the district court's decision to grant summary judgment
against him on Count 1 falls outside the scope of the instant
appeal.
 Nor does the district court's decision to enter summary
judgment against Britton on Counts 12 and 14 of the Amended
Complaint relate to Maloney either. These causes of action seek to
hold an unidentified police officer and his "co-conspirators"
liable for the seizure of Britton's ammunition clip, car keys,
rifle stock, a box of ammunition, and a motor vehicle registration. 
Britton admitted at trial that it was someone other than Maloney
who removed the ammunition clip and car keys from his pocket. He
offered no evidence to suggest that Maloney was responsible for
taking the other items. As the district court noted when ruling on
Maloney's post-trial motion for judgment as a matter of law, it was
Dooley who removed those other items from Britton's car. See
Britton v. Maloney, 981 F. Supp. 25, 32 (D. Mass. 1997).
 B.
 Having narrowed the issues before us, we turn to whether
the district court properly granted judgment as a matter of law
against Britton on Counts 8 and 10 of the Amended Complaint. Count
8 seeks to hold Maloney and others liable for "falsely
imprison[ing] [Britton] and depriv[ing] him of his constitutional
right to be free from a deprivation of liberty without due process
of law." Although the wording of this claim arguably implicates
the right to procedural due process under the Fourteenth Amendment,
Britton's appeal focuses entirely on whether the conduct complained
of violated his Fourth Amendment rights. Britton contends that
Maloney detained him at the police station against his will and
that even after being allowed to leave, he effectively had to
remain at the station if he wanted to get his rifle back.
 Maloney arguably seized Britton by asking him to go to
the second floor of the police station for questioning. Dooley had
grabbed Britton's rifle out of his hands just moments earlier. 
Maloney arrived on the scene and asked Britton what had happened. 
After listening to his initial response, Maloney replied: "[L]et's
go upstairs and talk about it." They proceeded through a metal
gateway, up a flight of stairs, and into a squad room for
questioning. At that point, perhaps no reasonable person would
have felt free to leave. See Michigan v. Chesternut, 486 U.S. 567,
573 (1988). A jury could find that Britton submitted to Maloney's
assertion of authority over him, and thereby endured a seizure
within the meaning of the Fourth Amendment. See United States v.
Sealey, 30 F.3d 7, 10 (1st Cir. 1994).
 But it is equally apparent that if this was a seizure,
Maloney was justified in effecting it. Britton entered the police
station carrying an AR-7 rifle in his hand. The first officer to
spot him thought that he was a gunman and pushed a panic button on
her desk to get help. Dooley responded to this call for assistance
by wresting Britton's rifle away. Maloney saw the ensuing
struggle, joined in the fray, and clearly had probable cause to
believe that some sort of crime had occurred. Cf. Astrada v.
Howard, 979 F. Supp. 90, 96 (D. Conn. 1997) (concluding that the
police lawfully detained someone who walked into a police station
with a loaded smoking gun, and that "had they decided to arrest
[him], their decision to do so would . . . have been supported by
probable cause"), aff'd, 152 F.3d 917 (2d Cir. 1998) (unpublished
table decision).
 At that point, it was appropriate for Maloney to detain
Britton for further questioning while his rifle was inspected, his
FID card was examined, and a check for any outstanding warrants
against him was performed. As soon as Britton had explained
himself and the circumstances of the incident were sufficiently
understood, Maloney allowed him to leave. With these facts in
mind, we cannot say that Maloney's decision to question Britton
violated his Fourth Amendment rights. See Elkins v. United States,
364 U.S. 206, 222 (1960) ("[W]hat the Constitution forbids is not
all searches and seizures, but unreasonable searches and
seizures.").
 Britton's claim that Maloney effectively forced him to
stay at the station is equally untenable. Maloney admittedly
decided to retain Britton's rifle "for safekeeping." But as
Maloney observed during his testimony, his refusal to return the
rifle "didn't mean [Britton] couldn't get it back at some other
point in time by going through the department['s] procedures." 
Unlike an airline passenger who might need his luggage in order to
continue traveling, see United States v. Place, 462 U.S. 696, 708-
09 (1983), Britton simply could have left and demanded the rifle
back later -- especially because he had a receipt in hand. Because
the seizure of his property did not amount to a seizure of his
person, the district court properly granted judgment as a matter of
law against Britton on Count 8 of the Amended Complaint.
 C.
 Count 10 of the Amended Complaint alleges that the
seizure of the barrel and the action of the rifle itself violated
Britton's "constitutional right to be free from [an] unreasonable
seizure of property without due process." As with Count 8,
Britton's appeal focuses entirely on whether the conduct complained
of violated his Fourth Amendment rights, even though the language
of the claim arguably implicates the right to procedural due
process under the Fourteenth Amendment. Britton contends that the
confiscation of his gun constituted a "seizure" that unduly
interfered with his "possessory interests in that property." 
United States v. Jacobsen, 466 U.S. 109, 113 (1984) (observing that
the Fourth Amendment protects both the privacy interests implicated
by a "search" as well as the possessory interests implicated by a
"seizure").
 At oral argument, Britton all but conceded that the
initial seizure of the rifle was constitutionally valid, and we
have little trouble reaching that conclusion. Britton walked into
the police station carrying a firearm in his hands. The first
officer to see him reasonably thought that he was a gunman. Dooley
and Maloney justifiably took the weapon away in order to defuse
what they perceived as a threat to their safety and the safety of
those around them. See United States v. Donlin, 982 F.2d 31, 34
(1st Cir. 1992) (concluding that the need to protect public safety
posed exigent circumstances justifying the warrantless seizure of
a shotgun). As a result, the only issue before us is whether
Maloney violated the Fourth Amendment by confiscating the rifle
"for safekeeping" after the perceived "emergency" had been defused
and Britton was allowed to leave.
 We are told that under Boston Police Department Rule 311,
a firearm that comes into the possession of a police officer while
on duty must be submitted to a ballistics unit for testing. 
Although Britton is elsewhere challenging the constitutionality of
this rule, the notion that Maloney's retention of the rifle
constitutes an independent violation of the Fourth Amendment would
seem to us to trivialize the gravity of constitutional torts,
especially when only three days elapsed between the time that
Maloney seized the rifle and the time that it became evidence in a
pending criminal proceeding. There are many instances in which the
lawful seizure of property necessarily results in a brief delay
before its return. It makes little sense to treat each of those
delays as an actionable violation of the Fourth Amendment. See
Towers v. City of Chicago, 173 F.3d 619, 629 n.7 (7th Cir.), cert.
denied, 68 U.S.L.W. 3228 (1999). We therefore sustain the district
court's dismissal of this claim.
 VI.
 Conclusion
 For the foregoing reasons, we affirm in part, reverse in
part, and remand this case for further proceedings consistent with
this opinion. Each party shall bear his own costs.
 Affirmed in part, reversed in part, and remanded for
further proceedings. Each party to bear his own costs.