Ting JI, Plaintiff,

v.

**BOSE CORPORATION and White Packert, Inc., Defendants.**

**Civil Action No. 06–10946–NMG.**

United States District Court, D. Massachusetts.

Feb. 14, 2008.

David K. Friedland, Jaime S. Rich, Lott & Friedland, P.A., Mark E. Stein, Lott & Friedland, P.C., Coral Gables, FL, Mark Schonfeld, Diane A.D. Noel, Burns & Levinson LLP, Boston, MA, Michael Schlesinger, Law Offices of Michael J. Schlesigner, Miami, FL, for Plaintiff.

Amy L. Brosius, Gregory A. Madera, Charles H. Sanders, Michael S. Forman, Fish & Richardson, P.C., Mark D. Robins, Michael R. Scott, Nixon Peabody, LLP, Boston, MA, Juanita R. Brooks, Fish & Richardson P.C., San Diego, CA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff, Ting Ji ("Ji"), is a model who was photographed by the defendant White Packert ("White"), on March 10, 2004. Those photographs were purchased by the defendant Bose Corporation ("Bose") for use in advertising its products. This case arises out of a dispute over the effect of two documents signed by Ji on the day of the photography shoot. One document placed restrictions on the uses to which Bose could put the images but the other granted an unconditional release. Each party intends to call an expert to testify as to the industry practice with respect to such releases. Before the

Court is each party's motion to exclude the other's expert testimony.

## I. Background

Ji signed two documents on March 10, 2004, each of which includes language that purports to govern the rights granted to White (and subsequently sold to Bose) in the photographs taken that day. First was a Payment Voucher, provided by Ji's agency, The Models Group, and signed by Ji and the casting director who had recruited her for the project. The Voucher recorded the times that she was to work and the amount she was to be paid and, in the "Uniform Model Release" section, the following language:

The photographs ... *may not be used for packages*, point of purchase, displays [etc] ... *This release takes precedence over any release signed at the time of the job* with the exception of contracts and agency releases that contain the same information contained herein. (emphasis supplied)

Ji asserts that this release sets the limits on Bose's rights to her photographs taken on that day. The Release section also included a blank that could be filled in setting the date on which the transferred rights (and restrictions) expire; that blank was not filled in.

On the afternoon of March 10, 2004, Ji signed an Adult Release furnished by White, which provides in relevant part that

In consideration of my engagement as a model I hereby grant White/Packert, their legal representatives, and those acting with their authority or permission [i.e. Bose], the absolute right and permission to copyright and use ... photographs of me ... *for any purpose whatsoever.* (emphasis supplied)

Bose contends that this document governs its rights over the photographs. Ji counters that it is prevented from having any legal effect by the preclusive language of the Payment Voucher.

## II. Analysis

### A. Legal Standard

■■■ The admissibility of expert testimony is governed by Fed.R.Evid. 702. Rule 702 provides that

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule places the district court in the position of a "gatekeeper" with respect to expert evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court's role is to determine whether the expert possesses some specialized knowledge such that his or her testimony will be helpful to the trier of fact and, if so, whether that knowledge arises from reliable methods applied in a reliable manner. *Id.* at 590–91, 113 S.Ct. 2786. This knowledge need not be scientific or technical. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■■■ Although *Daubert* set out a list of factors for the evaluation of scientific experts, see 509 U.S. at 593–94, 113 S.Ct. 2786, those factors do not always apply cleanly to non-scientific experts and the trial court's discretion in such matters is broad. *United States v. Mooney,* 315 F.3d 54, 62 (1st Cir.2002). An expert may not

"assist" the jury by expounding upon the law, however, because to do so would intrude upon the province of the trial judge. *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 100 (1st Cir.1997). The line between testimony regarding what the law requires and testimony describing how an industry practice typically operates is not always clear. The latter form of testimony is admissible. *Levin v. Dalva Bros. Inc.,* 459 F.3d 68, 79 (1st Cir.2006).

■ Within the realm of specialized knowledge, an expert's testimony is only admissible if the Court finds that it is reliable. In non-technical areas, long experience in a field can confer expertise upon a witness. *Den Norske Bank AS v. First Nat'l Bank of Boston,* 75 F.3d 49, 57 (1st Cir.1996).

### B. Plaintiff's Motion to Exclude Opinion Testimony (Docket No. 67)

■ Bose intends to call Kristie Raymond Babbin ("Babbin") as an expert witness to testify on the ordinary custom and practice of the modeling industry. She has worked in the industry for nearly 20 years and reportedly has extensive experience in working with the forms at issue in this case. In brief, Ji executed two forms on the day of her photo shoot: a payment voucher provided by her modeling agency and a release form in favor of the photographer and its assigns. The disposition of the case turns on which form controls because the release grants unrestricted rights to the photographer (and, by assignment, to Bose) whereas the payment voucher limits the uses to which the photographs may be put.

Babbin was the casting director for the photo shoot in question and was responsible for recruiting Ji to the engagement with Bose as well as managing the paperwork on that day. Her expert report indicates that she will testify that the payment voucher serves to allow the model to prove that she attended the shoot so that the agency will pay her. She proposes to testify further that a separate release form is nearly always used to set forth any restrictions on the subsequent use of the photographs taken at the shoot. Although the voucher includes a "release" section language that defines terms, Babbin seeks to tell the jury that it is ignored as a matter of routine except in the rare instance in which a separate release is not executed, in which case the blank in the voucher's release section (as well as the box in which the "usage" of the photographs was to be described, which was also allegedly left blank at the time of execution) will be filled in. Ji executed a separate release and did not fill in the limitation-of-terms section on her payment voucher.

Babbin's expert report also includes statements purporting to evaluate the legal effect of each form. As discussed in more detail with respect to the plaintiff's expert report below, such legal conclusions are not a proper subject for expert testimony and they will not be admitted from either expert.

Ji asserts that Babbin should not be allowed to testify for three reasons. First, Ji alleges that Babbin's testimony is not reliable because Babbin has been named (but not served) as a third-party defendant in this case. In essence, Bose has asserted a right to indemnification from Babbin. Ji implies that Babbin has convinced Bose to refrain from exercising that right by providing testimony favorable to Bose's interests.

Second, Ji questions, as a general matter, whether general industry experience is sufficient to qualify Babbin as an expert.

Finally, Ji asserts that even if Babbin qualifies as an expert under Rule 702, her

testimony should be excluded because its prejudicial impact far outweighs its probative value, in violation of Fed.R.Evid. 403. This argument rests on the proposition that the jury will be confused and possibly unduly influenced by Babbin's dual role as a fact witness and also an expert.

None of Ji's objections to Babbin's testimony is sufficiently well-supported to warrant its exclusion. First, the fact that she has an interest in the outcome of the case does not disqualify her from testifying. Ji declaims that Babbin is an interested party in this suit but the First Circuit Court of Appeals has held repeatedly that even employees of parties may testify as experts. *E.g. Den Norske Bank*, 75 F.3d at 58; *Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 28 (1st Cir.1998). Ji is correct that under *Daubert* the Court (and the jury) evaluates Babbin's qualifications as an expert in terms of "reliability" and that she may be viewed as less trustworthy in light of her interest in the case. The *Daubert* reliability inquiry is, however, limited to the *means* by which she gained her expertise (i.e. reliable methods applied in a reliable manner). As discussed below, sufficient experience in a relevant field can qualify a person as an expert witness and that expertise is unaffected by her interest in this case. Any *personal* reliability questions that Ji might raise on cross examination go to her credibility and are for the jury to decide. *Id.*

Second, as noted above, sufficient experience in the relevant industry can support a finding of expertise and, in this case, it does. *Den Norske Bank*, 75 F.3d at 57. Thirdly, the roles of fact witness and expert witness are not necessarily mutually exclusive and, apart from that specific point, Ji has not substantiated her allegation that Babbin's testimony will be unfairly prejudicial at all. In light of her obvious familiarity with the industry, in general, and this transaction, in particular, her testimony may offer substantial probative value and it will not be excluded.

### C. Defendant's Motion to Exclude Expert Testimony (Docket No. 72)

█ Bose's motion to exclude the testimony of Ji's expert rests on an entirely different theory. Plaintiff's expert, Richard W. Wolfe ("Wolfe") is an attorney with long experience practicing entertainment law. His expert's report, produced pursuant to Fed.R.Civ.P. 26, focuses heavily on the legal impact of the two releases signed by Ji. In essence, he proffers as his expert opinion that the Payment Voucher controls and the Adult Release has no legal force whatsoever.

Bose characterizes this as impermissible "expert" opinion on legal issues. *Nieves–Villanueva*, 133 F.3d at 100. It contends that an expert may not proffer testimony on the legal questions governing a case because that is the role of the trial judge.

Bose's argument is compelling. However, the line is not always clear between impermissible testimony about what the law is and permissible expert testimony about standard industry practice. *Den Norske Bank*, 75 F.3d at 57. Wolfe's expert report is, as Bose contends, a mix of admissible statements regarding industry practices and inadmissible conclusions of law. Both parties are advised that only the former kind of expert testimony will be admitted at trial. To aid them in their preparation for trial, this Memorandum will review and analyze several examples of each kind of statement.

█ On page five of his report, Wolfe asserts that "Under common law and many case precedents, rights not conveyed are deemed retained." That is a statement of a background principle of law and Wolfe will not be permitted to testify

to that effect. Similarly, his statement on page six that "there is no statement of consideration in the Adult Release" is a legal conclusion that is not for an expert to express to a jury. Most egregiously, he states on page seven that "Since the photographer has signed as the client in the Voucher, the Voucher has legal precedent over the Adult Release." That bald, conclusory assertion that the ambiguity in the contract terms, to be decided by the jury as a matter of fact, is susceptible to a simple legal answer, will not go to the jury. Finally, on the subject of the unfilled blank on the Voucher form, he states that

> Where no termination of the grant is specified, as in the instant case, there is no sunset clause and thus, the grant of rights will continue in perpetuity.

Once again, Wolfe offers a legal conclusion about the effect of a term in the agreement which is improper and will not be admitted.

By contrast, Wolfe avers on page six of his report that he has

> experienced that photographers often ask models to sign "Standard" releases [like the Adult Release in this case] during a photo shoot. In order to protect their models, in the event they unknowingly sign such widespread and unlimited releases, modeling agencies typically set forth limiting language in the voucher . . . which is meant to have overriding effect in the event the model signs the widespread and unlimited release.

That is apparently a statement of Wolfe's experience of standard industry practice. He describes common tactics used by photographers, the way that agencies respond and what their competing intentions are. Because he refrains, at this point, from opining on the legal force of each party's actions, he purports to testify as an expert and, therefore, such testimony is likely permissible. Similarly, his statement (also on page six) that "Many modeling agencies that I have represented or dealt with use a standard form where the release language is incorporated into the payment voucher" reflects his own experience and is not objectionable.

Just as Ms. Babbin may testify that in her experience, the limiting language on a Payment Voucher is ignored in favor of a subsequent Release form, Mr. Wolfe may testify that his experience has been the converse. The ultimate resolution of this case depends on interpretation of ambiguous contract terms, a question that will be decided by the jury based on extraneous evidence. *Den Norske Bank*, 75 F.3d at 52. Wolfe's testimony, just as Babbin's, will be admissible to the extent that it can assist the jury in evaluating that extraneous evidence.

**ORDER**

In accordance with the foregoing, Ji's motion to exclude expert testimony (Docket No. 67) and Bose's motion to exclude opinion testimony (Docket No. 72) are both **DENIED,** provided, however, that if proper foundations are laid for their testimony, both "experts" will be allowed to testify but will be constrained as outlined in the memorandum above and will be prohibited from expressing their legal (and quasi-legal) opinions.

**So ordered.**